[Crim. No. 643.   In Bank.—December 29, 1900.]

THE PEOPLE, Respondent, v. J. ELLIS RODLEY, Appellant.

Criminal Law—Perjury—Indictment—Assignment of Perjury—Absence of Demurrer.—An indictment for perjury which, after setting out the testimony alleged to have been falsely given in the matter of the probate of an alleged will, avers generally "that said statements made as aforesaid" by the defendant "were then and there false and untrue," and were known by the defendant to be so at the time of making them, contains a sufficient assignment of perjury in the absence of a demurrer to the indictment.

Id.—Waiver of Uncertainty—Motion to Arrest Judgment.—Uncertainty in the assignment of perjury as to the falsity of numerous statements of the defendant charged to have been perjurous, in not conforming fully to the requirements of sections 950 and 952 of the Penal Code, is waived by a failure to demur to the indictment; and cannot be taken advantage of after trial upon the merits by a motion in arrest of judgment.

Id.—Averment of "Materiality."—An allegation in the indictment that the testimony alleged to be false "was then and there material to the issue and matter being heard in said proceeding," is a sufficient averment as to materiality.

Id.—Amendment of Indictment Before Arraignment— Correction of Mistake.—An indictment may be resubmitted to the grand jury by the court for the amendment thereof by the correction of a mistake occasioned by inadvertence, where the defendant has not been arraigned and has not pleaded thereto, and is injured in no way by the correction.

Id.—Affidavit of Bias of Judge—Counter-Affidavits —Power of Court to Decide.—Where counter-affidavits are presented in opposition to an affidavit of the bias or prejudice of the judge about to try the case, pursuant to section 170 of the Code of Civil Procedure, the court may decide, after reading all of the affidavits, that the regular judge is not disqualified to try the case, and may refuse to transfer the cause, or to change the judge.

Id.—Counter-affidavit of Judge—Objection Upon Appeal.—Where the judge presented a counter-affidavit of his own feelings toward the defendant and his case, which was not objected to by the defendant at the hearing, it is too late to object thereto for the first time upon appeal.

Id.—Jury—Challenge to Panel—Substantial Compliance With Law. Where there was no substantial departure from the forms

prescribed by law in respect to the drawing and return of the jury, a challenge to the panel is properly overruled.

ID.—LIST OF JURORS—NAMES LEFT IN BOX—ESTIMATE OF POPULATION. — The supervisors, in making up the list of jurors of the number ordered by the court for the current year, may include as part of the list, though not as increasing it, the names of such qualified jurors as were left in the box for the previous year and did not serve; and they may also estimate the population of the wards and townships by the number of votes cast in each district at the last preceding election.

ID.—PERJURY UPON PROBATE OF WILL—EVIDENCE—AFFIDAVITS USED UPON HEARING.—Upon the trial of a charge of perjury committed upon the hearing of the probate of a will, the affidavit of the publication of the notice of hearing and the other affidavits used in the probate proceeding are admissible as part of the record of the matter in which the perjury is charged to have been committed, and are competent evidence to prove the matters therein stated.

ID.—CIRCUMSTANTIAL PROOF OF CONSPIRACY—PROBATE OF FICTITIOUS WILL—ATTEMPTED BRIBERY—CONCERT OF ACTION.—Evidence of the testimony given at the hearing of the probate matter, and that the alleged will was fictitious and was written by the proponent, who was named as a beneficiary thereunder, and that both the proponent of the will and the defendant had attempted by offers of bribery to secure another person as a subscribing witness to the will after the death of the alleged testator, is competent and sufficient proof of a concert of action between the proponent and the subscribing witnesses to accomplish one common criminal purpose, and establishes a conspiracy between them by the circumstantial method of proof.

ID.—DECLARATIONS AND ACTS OF COCONSPIRATOR.—Where a conspiracy is established between the defendant and other persons, the declarations and acts of a coconspirator made and done in course of carrying out the common criminal design are competent evidence against the defendant.

ID.—ORDER OF PROOF OF CONSPIRACY AND OF DECLARATIONS—DISCRETION. Where, on the whole testimony, the conspiracy is proved beyond doubt, the order of proof thereof is in the discretion of the court; and it may permit additional evidence of conspiracy after the admission of the declarations of a coconspirator.

ID.—GENERAL OBJECTION TO CONVERSATION—DECLARATION AS TO BRIBERY OF DEFENDANT—OBJECTION NOT URGED—INSTRUCTION.—Where the defendant offered only a general objection to proof of a conversation of the proponent of the will as a coconspirator, much of which was certainly competent, and raised no special objection to her particular declaration that the defendant was to receive five thousand dollars for witnessing the will, and did not move to strike out that declaration as incompetent to prove the conspiracy, and an instruction was given at his request

CXXXI. Cal.—16

that her declarations could not be considered unless the jury first find from the evidence beyond reasonable doubt that a conspiracy existed between them, it will not be inquired upon appeal whether such particular declaration was hearsay evidence or not.

ID.—BROAD MOTION TO STRIKE OUT DECLARATIONS.—A motion to strike out the evidence of a witness as to the declarations of a coconspirator which covers competent evidence of such declarations is too broad, and is properly overruled.

ID.—OBJECT OF CONSPIRACY—DECLARATIONS OF COCONSPIRATOR AFTER PERJURY—INFLUENCING WITNESS BEFORE GRAND JURY.—Where it appears that the object of the conspiracy was not merely to probate the false will, but to "loot" the estate, and that it was still necessary for the conspirators to avoid detection and imprisonment, and to keep up the deception before the probate court, evidence of the declarations of the proponent of the will made after the date of the alleged perjury, showing that she sought to induce one to whom she had offered a bribe to become a subscribing witness to the false will, not to testify before the grand jury is admissible against the defendant, as being evidence of the declarations of a coconspirator made in furtherance of the common design, and not made after its accomplishment.

ID.—SELF-SERVING DECLARATIONS—CORROBORATION—MOTIVE—ABSENCE OF PROOF.—Declarations of the defendant, testified to by himself to have been made soon after the death of the alleged testator, that the alleged will was then in existence, are self-serving and inadmissible to corroborate his evidence, in the absence of proof that they were made at a time when he had no motive or interest to fabricate them, and of evidence tending to show when the criminal design was first conceived.

ID.—DECLARATION OF DECEASED—INTENTION TO REMEMBER PROPONENT OF WILL—INCOMPETENT EVIDENCE.—The declaration of the deceased as to his intention to remember the proponent of the false will for her kindness to him is not competent evidence on questions pertaining solely to the formal execution of the will, or upon a charge of false swearing as to its execution.

ID.—MATERIALITY OF PERJURED EVIDENCE—PROBATE OF ATTESTED OLOGRAPHIC WILL.—Where the petition for probate of the alleged will stated the petitioner's belief that the will was wholly written, dated, and signed by the testator, and also stated facts showing its formal execution and attestation before subscribing witnesses, and the court decreed both that it was olographic and was executed as a nonolographic will should be, the defendant's testimony to the execution and attestation of the will was material to the matter before the court.

ID.—FORM OF OATH OF DEFENDANT.—It is not material to the charge of perjury whether the defendant was sworn in the probate proceeding in the usual form, or otherwise.

ID.—JURISDICTION OF PROBATE PROCEEDING—RECITALS IN DECREE—PROOF OF PUBLICATION—POWER OF COURT.—The jurisdiction of the court over the probate proceeding is to be determined from the record thereof; and where the decree contains all the necessary recitals to show that the court had jurisdiction over the matter of the petition for probate, which was shown to have been filed, it is immaterial whether the affidavit of publication of the notice of hearing was regular or defective. The court having jurisdiction had power to hear the evidence as to the will, and to permit a new affidavit of publication to be filed thereafter, if necessary.

ID.—DIRECT EVIDENCE OF PERJURY—FALSITY OF TESTIMONY—CONSTRUCTION OF CODE.—The rule laid down in section 1968 of the Code of Civil Procedure requiring direct evidence in cases of perjury means that there must be direct evidence only as to the falsity of the testimony charged to be perjury.

ID.—DIRECT TESTIMONY OF ACCOMPLICE—CORROBORATION—CREDIBILITY—PROVINCE OF JURY.—An accomplice may be the one witness giving the direct and positive evidence required by section 1968 of the Code of Civil Procedure in cases of perjury, in connection with other corroborating circumstances, required by that section in case of any single witness; and the credibility of such accomplice and the weight of his testimony is a question for the jury in such cases as in others.

ID.—REQUESTED INSTRUCTIONS COVERED BY CHARGE GIVEN.—It is not error to refuse requested instructions substantially covered by the charge given.

ID.—ERROR IN REQUESTED INSTRUCTIONS.—The defendant cannot assign error in instructions given at his own request.

ID.—CAUTION AS TO ORAL ADMISSIONS—PROVINCE OF JURY.—Instructions invading the province of the jury in cautioning them against testimony of oral admissions and statements should be rejected. Any instruction given on that subject should be confined as nearly as possible to the language of subdivision 4 of section 2061 of the Code of Civil Procedure.

ID.—REASONABLE DOUBT—DUTY OF INDIVIDUAL JURORS—IMPROPER INSTRUCTION.—A requested instruction to the effect that it is the duty of each juror to decide the question of reasonable doubt for himself, "and not to compromise or sacrifice his views or opinions of the case in deference to the views or opinions of others," is properly refused.

ID.—CIRCUMSTANCES CORROBORATING DIRECT WITNESS—REQUESTED INSTRUCTIONS.—Section 1968 of the Code of Civil Procedure does not require "strong" corroborating circumstances to sustain the direct evidence of one witness to the fact of perjury, and an instruction containing that word is properly modified by striking it out. Where full instructions are given as to the necessity of corroborating circumstances established by independent evi-

dence of such a character as clearly to turn the scale and overcome the oath of the defendant and the presumption of his innocence, a requested instruction that the corroborative evidence, if true, must make the facts sworn to by the defendant not true, is properly refused.

ID.—CRIMINAL INTENT—INTENT TO SWEAR FALSELY—REQUESTED INSTRUCTION.—The intent to swear falsely is the "specific criminal intent" required in cases of perjury; and where the instructions given cover that subject, a general instruction requested that the testimony must have been given with a "specific criminal intent," not specified in the requested instruction, is properly refused.

ID.—BURDEN OF PROOF—REASONABLE DOUBT—PREPONDERANCE OF EVIDENCE—INSTRUCTIONS.—Where, in addition to instructions given that the burden of proof is on the prosecution, and that the jury must be entirely satisfied of defendant's guilt before they can convict, they are instructed that "if, upon such proof, there is a reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal, for it is not sufficient to establish a probability, though a strong one, arising from the doctrine of chances that the fact charged is more likely to be true than the contrary; but the evidence must establish the truth of the fact to a reasonable and moral certainty," etc., the charge is the equivalent of a requested instruction that no mere preponderance of evidence would warrant a conviction, and it is not error to refuse it.

ID.—IMPROPER REMARK OF DISTRICT ATTORNEY—DEFENDANT NOT INJURED.—An improper remark of the district attorney as to the promptness of the verdict of a jury on a contest of the alleged will is not prejudicial to the defendant, where it appears that he admitted at the trial that the will was bogus and was not in the handwriting of the deceased, and it was proven without conflict that the will and the signature of the alleged testator was written by the proponent of the will.

APPEAL from a judgment of the Superior Court of Butte County and from an order denying a new trial.   John C. Gray, Judge.

The facts are stated in the opinion.

George D. Collins, for Appellant.

Tirey L. Ford, Attorney General, C. N. Post, Assistant Attorney General, and Joseph D. Sproul, District Attorney of Butte County, for Respondent.

GRAY, C.—The defendant was convicted of perjury and sentenced to imprisonment in the state prison for the term of twelve years.   He appeals from the judgment and from an

order denying his motion for a new trial. The transcript on appeal contains a bill of exceptions. The defendant was a practicing physician, and for at least a portion of the time covered by the evidence he was the mayor of Chico.

The theory of the prosecution is that the defendant committed the crime charged to assist the purpose of a conspiracy entered into between himself, Mrs. Houseworth, and J. M. Garner, to the end that Mrs. Houseworth might succeed to the estate of one A. Fuller, deceased, by means of a false and forged will. The perjury is charged to have been committed by defendant, as a pretended subscribing witness, at the probate of the will. The alleged will was shown to be in the handwriting of Mrs. Houseworth, and she was by the terms thereof to have received all the property and estate of deceased except a thousand dollars; said estate being about thirty-two thousand dollars in value. The accomplice, Garner, pleaded guilty to the charge of perjury, and thereafter, at the trial of defendant, he testified in substance that he and defendant signed the will together in the presence of each other, and without the request or presence of Fuller, in the summer of 1898, and several months after the death of said Fuller; that defendant persuaded him to sign by saying there was five thousand dollars in it for each of them; and that after they had both signed defendant wrote the attesting clause in above their signatures. The following is a copy of the said alleged will and the attestation thereto, to wit:

"June 9th, 1897.

"I desire that Mrs. Minnie Houseworth have all my property at my death, except I reserve one thousand dollars to be equally divided between the legal heirs to my estate.

"A. FULLER.

"Signed as witnesses after being requested to do so by A. Fuller, he declaring this to be his will and that he had signed it. We therefore, in his presence and in the presence of each other, signed our names as witnesses.

"Aug. 3, 1897.                          J. E. RODLEY,
"J. M. GARNER."

It is shown that Fuller died on or about October 18, 1897; and that defendant testified at the hearing in the matter of the probate of said alleged will that he signed the will as a

subscribing witness on August 3, 1897, in the presence of Ful-
ler and Garner, and that Fuller then and there declared that
he had signed the will and requested defendant and Garner
to sign as witnesses. H. T. Batchelder, county clerk of Butte
county, testified that in February, 1898, he had two conversa-
tions with defendant; that in the first one defendant asked
him if he was acquainted with Fuller's signature, and on his
replying that he thought he was, defendant asked him if he
would be willing to certify to it if he knew it to be Fuller's
signature. Defendant did not at that time exhibit any docu-
ment, but said: "If you could be certain that it is his will it
would be to your interest in the sum of three thousand dol-
lars." In the second conversation, had also in February, 1898
—the date of which is fixed by a letter from defendant—the
defendant exhibited the identical will which was subsequently
filed for probate and concerning which defendant gave the al-
leged false testimony; the witness read the same over once or
twice; the defendant asked him if he thought that was Fuller's
signature, to which he replied, "I think not, doctor"; the de-
fendant then said, "You wouldn't be willing to sign it as a
witness?" and Batchelder answered that he would not; that
he had signed but few wills, and those always upon invitation.
The defendant was the family physician of the witness Batch-
elder, and they were on friendly terms at the time of the oc-
currences narrated. The defendant as a witness squarely de-
nied that he had ever exhibited any will to Batchelder or had
ever asked him anything about Fuller's signature, and reaf-
firmed the truth of the testimony given by him at the probate
of the will. On cross-examination the defendant was asked if
on the twenty-fifth day of October, 1899, in a conversation
with S. H. Wilson, the sheriff, he, the defendant, did not use
the following language: "There was nothing in that Batchelder
matter that has been before the grand jury. I did go down
to Biggs on the fifteenth day of February, 1898, and I had
witnessed a will for Alfred Fuller, and it was lost, so I made
a copy of it, and took the copy down with me and showed it
to Batchelder and asked him if he thought he would sign that
as a witness or not, and he told me he wouldn't have anything
to do with it, so I put on my overcoat and went out, and on
the road home I tore the copy up." In reply, the defendant

said: "I think I did make that statement," and when asked
if the statement was correct he said: "I think so; yes, sir."
Later in his cross-examination when the same matter was re-
verted to and he was asked concerning it, he replied: "I don't
recollect saying anything of the kind." Subsequently, said S.
H. Wilson was called by the prosecution and testified in sub-
stance that the defendant did make the statement substantially
as quoted in the question above.

It appeared from the evidence that Mrs. Houseworth and
said Garner were also witnesses at the probate of the will; that
the testimony of the latter as to the facts surrounding the wit-
nessing of the will was substantially the same as that of the
defendant. Mrs. Houseworth presented the will for probate
October 19, 1898, in her petition stating that she believed it
was in the handwriting of the deceased, Fuller, and at that
hearing she testified that she had received the will from one
H. Carmack on October 17, 1898, and that she never saw the
document before that date. In May, 1898, as testified at the
trial by one J. B. Swearingen, Mrs. Houseworth stated to him
that she had a will that Mr. Fuller had left her and she had
received it in a letter handed her by a Mr. Fimple; that it
did not have any witnesses to it and the lawyers told her it
needed two witnesses; "and so all they will have to do is to
write on a piece of paper that they had signed it at Fuller's
request, and sign their names to it and attach it to the will."
" 'Now,' she said, 'I want you to sign as one of the witnesses;
Dr. Rodley has agreed to sign it for one, and I have agreed to
give him five thousand dollars to sign it, and I will give you
the same. I would not offer you any less than I agreed to pay
Mr. Rodley.' "

On this appeal a great many points are made, the more im-
portant of which we will take up and dispose of in the order
in which they are presented in appellant's brief.

1. The indictment is in the following language: "J. Ellis
Rodley is accused by the grand jury of the county of Butte,
state of California, by this indictment, of the crime of per-
jury, a felony, committed as follows, to wit: That on the
twenty-third day of November, 1898, and before the finding
of this indictment, at the county of Butte, state of California,
in the superior court of the said county of Butte, and state of

California, Honorable John C. Gray, judge presiding therein, there was pending and on trial before the said superior court of the county of Butte, a certain proceeding, to wit: The matter of the probate of the alleged will of one Alfred Fuller, deceased, and the petition of Mrs. Minnie Houseworth for letters of administration with the will annexed. And said superior court, as aforesaid, had competent jurisdiction then and there to hear, decide, and determine said matter and proceeding according to the law of the state of California, and was then and there fully empowered to administer the law in said matter and proceeding; the said J. Ellis Rodley was then and there called as a witness in said matter, and then and there took an oath before the said superior court, and under the direction of said superior court of the county of Butte, state of California, in due form of law, that he, the said J. Ellis Rodley, would then and there testify truly, as a witness in the matter and proceeding then and there being heard by said superior court, as aforesaid, said oath having been then and there administered by one C. F. Belding, who was then and there a duly appointed, qualified, and acting deputy county clerk of said county of Butte, state of California, then and there an officer authorized by law to administer oaths, and to administer an oath to said J. Ellis Rodley, as a witness in said proceeding, then and there pending as aforesaid; he, the said J. Ellis Rodley, did then and there, and being so sworn, at said county of Butte, state of California, and in said proceeding aforesaid, in a matter material to such issue then and there being heard by said court as aforesaid, he, the said J. Ellis Rodley, having so taken such oath as aforesaid, willfully, unlawfully, corruptly, falsely, feloniously, and contrary to such oath by him, the said J. Ellis Rodley, then and there taken, and he, the said J. Ellis Rodley, then and there knowing the same to be false and untrue, state, declare, make oath, swear, and testify the truth to be in substance as follows, to wit." Then follow some nine or ten folios of the testimony, both question and answer, of the defendant given at the hearing of the said probate proceeding, and after that the indictment continues as follows:

"All of which was then and there material to the issue and matter being heard in said proceeding, and that said state-

ments made as aforesaid by said J. Ellis Rodley were then and there false and untrue and were then and there at the time of making them by said J. Ellis Rodley known by said J. Ellis Rodley to be so false and untrue.

"Whereby he, the said J. Ellis Rodley, did then and there, as aforesaid, willfully, corruptly, and contrary to his oath, and knowing his testimony to be false, swear falsely, and feloniously commit willful perjury, contrary," etc.

There was no demurrer to the indictment, but on arraignment the defendant pleaded not guilty.

The objections urged to this indictment are: (a) It omits the requisite "assignment of perjury"; (b) There is no adequate averment showing the materiality of the testimony. The requirement of the law as to "assignment of perjury" is found in section 966 of the Penal Code, and requires only that there be "proper allegations of the falsity of the matter on which the perjury is assigned." The allegations to the effect that the statements made by defendant were then and there false and untrue and known by him to be so false and untrue are, we think, in the absence of a demurrer, a sufficient "assignment of perjury" under the code provision above cited. This precise question has never been decided by this court so far as we have been able to ascertain. In *People v. Ah Bean,* 77 Cal. 12, and *People v. De Carlo,* 124 Cal. 462, the indictment was in each instance in substantially the same form, so far as the "assignment of perjury" is concerned, as it is in this case. But in neither of those cases was any question made as to the sufficiency of the indictment in this respect. However, it seems plain here that the indictment states facts constituting an offense, and the worst that can be said of it is, that it is not as specific and certain as it should have been in its allegations as to the falsity of the numerous statements of defendant charged to have been perjurous; and perhaps the indictment for that reason does not conform to the requirements of sections 950 and 952 of the Penal Code. But an uncertainty of such a character would be waived by the defendant's failure to demur. He cannot, under our system, lie by until he shall see the result of a trial of his case on its merits and then be permitted to take advantage of a mere uncertainty in the indictment by motion in arrest of judgment. (Pen. Code, secs.

1004, 1012, 1185; *People v. Swenson*, 49 Cal. 388; *People v. Chuey Ying Git*, 100 Cal. 437; *People v. Mesa*, 93 Cal. 580; *People v. Villarino*, 66 Cal. 228.)

It is specifically alleged in the indictment that the testimony alleged to be false "was then and there material to the issue and matter being heard in said proceeding." This is a sufficient allegation as to materiality. (*People v. De Carlo, supra.*) The other objections to the indictment are based on false premises and will each disappear on a careful reading of that document.

2. It appears that the grand jury made a partial report and presented a true bill against defendant for perjury on December 15, 1899, and the clerk was directed by the court to file the same and issue a bench warrant thereon for the arrest of defendant, and his bail was fixed at the sum of five thousand dollars. The jury then retired for further deliberation. At 3 o'clock P. M. of the same day the grand jury returned into court, and after being called the court stated and the jury responded as follows:

"The indictment which was presented this forenoon in the case of *The People of the State of California v. J. Ellis Rodley, Defendant*, was resubmitted by the court to the grand jury from the district attorney to correct an error that appeared upon the face of the indictment, in this, that it appeared from the indictment presented that the matter before the court at the time that J. Ellis Rodley was sworn was a petition for letters testamentary in the estate of Alfred Fuller, deceased, whereas the fact was, and it is in the knowledge of the court, that the petition called for letters of administration with the will annexed.

"Q. Have you now, Mr. Foreman, the indictment corrected in that respect? A. Yes.

"Q. Has it been submitted and voted upon after correction? A. Yes.

"Q. And it is now returned to this court as the correct indictment? A. Yes."

The clerk was thereupon directed to file the indictment, and that the record show that it had been resubmitted. A bench warrant was ordered to issue for the arrest of said J. Ellis

Rodley, with bail fixed at five thousand dollars. It was upon the indictment as amended that the defendant was arraigned, pleaded not guilty, and was thereafter tried. He was not arraigned on the indictment prior to its amendment. It appears from the foregoing that there must have been a variance between the indictment as originally presented to the court and the evidence upon which the indictment was found. There is nothing in the law that will prevent the correction of a mere mistake like this, the result, no doubt, of an inadvertence. The defendant is injured in no way by the correction. "There is no doubt that, with leave of the court, an indictment may be amended by the grand jury at any time before the prisoner has pleaded and before they are discharged." (Thompson & Merriam on Juries, 704; *Lawless v. State,* 4 Lea, 173; *State v. Creight,* 1 Brev. (S. C.) 169.[1]) In the case of *Terrill v. Superior Court* (Cal., March 17, 1900), 60 Pac. Rep. 516, the question for determination was whether the court, after demurrer sustained to the indictment, could resubmit the case to the same grand jury that had found the first indictment. It was held that this could not be done under the code provision cited therein; but the judge who delivered the opinion of the court in the course thereof remarked: "Perhaps before the defendant has been arraigned the indictment could be withdrawn and by leave of the court sent back to the jury for amendment." This is what seems to have been done in the present case, and we can see nothing in it prejudicial to any right of defendant, and nothing of which he can be heard to complain.

3. The defendant made and filed his affidavit, intending to thereby invoke the provisions of section 170 of the Code of Civil Procedure, and have his case tried before a judge other than the regular judge of the court in which the same was pending. The counter-affidavits of the district attorney and of the judge before whom the defendant objected to being tried were also filed. The court decided, after reading all said affidavits, that the regular judge was not disqualified to try the case and refused to secure the services of another judge for that purpose. In this we cannot see that the court erred. There was no objection made by defendant at the hearing to

[1] 2 Am. Dec. 656.

the court considering the affidavit made by the judge as to the condition of his own feelings toward the defendant and his case. It is too late to object to it for the first time on appeal. (*Higgins v. City of San Diego*, 126 Cal. 303.)

4. The challenge to the panel was properly overruled. The number of jurors fixed in the order of the court is not to be increased by the names left in the box at the end of the previous year, but the supervisors are at liberty to select from such names as many as possess the necessary qualifications of jurors and have not served the previous year, and make them part of the list for the current year. (Code Civ. Proc., secs. 206, 211.)

There was no impropriety in the supervisors estimating the population by the number of votes cast in each district at the last preceding election. We cannot say that this was not the most accurate basis they possessed for such estimate. (Code Civ. Proc., sec. 206.)

The clerk testified that the seventy-five ballots or slips drawn from the jury-box were folded so as to conceal the names of the persons thereon written; John S. Henrison being one of these names, it follows that his name was duly concealed. There was no substantial departure from the forms prescribed by law in respect to the drawing and return of the jury.

5. The affidavit of the publication of notice of hearing of petition for probate and for letters was properly admitted in evidence as part of the record of the matter in which the perjury is charged to have been committed, and was competent evidence to prove the matters therein stated. (Code Civ. Proc., secs. 2010, 2011; *Heflin v. State*, 88 Ga. 151.[2]) The other affidavits used in the probate proceeding were admissible for the same reason.

6. It was competent to put in evidence the testimony of Mrs. Houseworth and Garner given at the hearing of the probate matter, as well as the conversation of the former with the witness Swearingen, wherein she attempted to persuade said Swearingen for five thousand dollars to subscribe as a witness to the alleged will of the already deceased Fuller, for the reason that all these acts and declarations, taken in connection with

---

[2] 30 Am. St. Rep. 147.

the acts and declarations of defendant, tended strongly to show that the defendant, Mrs. Houseworth, and Garner were each working to accomplish one common criminal purpose. Such concert of action on their part would be evidence tending to establish a conspiracy between them by the circumstantial method, which is usually the only way a conspiracy can be established. (*People v. Bentley*, 75 Cal. 407.) Before it was sought to put in evidence the conversation of Mrs. Houseworth with Swearingen it had been shown that the will was false and fictitious and had been written by Mrs. Houseworth, and that she was, according to its terms, the beneficiary thereunder, and that the defendant had been endeavoring by improper means to secure a witness to the will after the death of the pretended testator. This was sufficient proof of conspiracy between the defendant and Mrs. Houseworth to make the declaration and acts of the latter done in course of carrying out the common criminal design competent evidence against the former. (*People v. Lovren*, 119 Cal. 88.) Much evidence tending to establish the conspiracy was introduced after the declarations of Mrs. Houseworth, and, taking all the evidence on this subject together, the conspiracy is made to appear beyond any doubt. The order of the proof was in the sound discretion of the trial court, and we see no abuse of such discretion. (*People v. Daniels*, 105 Cal. 262; *People v. Fehrenbach*, 102 Cal. 394.) It is particularly urged that the conspiracy could not be proved by the declarations of Mrs. Houseworth, reference being had, doubtless, to her declaration that the defendant was to receive five thousand dollars for witnessing the will. There was no objection made to the particular portion of the conversation referred to above, but the objection was general to the whole of it. Much of the conversation was competent evidence beyond any question, and if defendant desired those portions of it which tended only to show that the defendant was a party to the conspiracy excluded he should have moved to strike out those portions. The motion that the testimony of Swearingen be stricken from the record was certainly too broad. However, an instruction was given at the request of defendant which perhaps had the same effect as would the granting of a proper motion to strike out, as to this evidence. This instruc-

tion reads as follows: "You are instructed that the alleged declarations of Mrs. Houseworth to the witness Swearingen cannot be considered by you unless you first find from the evidence and beyond all reasonable doubt that there existed a conspiracy to which both defendant and Mrs. Houseworth were parties." In view of this instruction, and the failure to object in the proper time and manner, it is not necessary for us to here determine whether any portion of Mrs. Houseworth's declarations were hearsay evidence of the part that defendant was taking in the conspiracy or not.

That portion of Swearingen's testimony wherein he details a conversation with Mrs. Houseworth, in which she sought to induce him not to testify before the grand jury that she had offered him five thousand dollars to sign a will as a witness, was properly admitted because the conspiracy and its purpose was not then accomplished. The object of the conspiracy was to "loot" the estate of the deceased Fuller; the perjury of defendant and the others in the probate proceeding was only one step to this end. It had been necessary before this to fabricate a will, and it was still necessary for the conspirators to avoid detection, keep themselves out of the state prison, and keep up the deception that they were practicing on the probate court, in order to realize anything from their crimes; and it was with these ends in view, no doubt, that Mrs. Houseworth approached Swearingen on the subject of his testimony before the grand jury. We think, therefore, that what she said and did in that connection was in furtherance of the purpose of the conspiracy, and does not come within those cases which exclude the acts and declarations of one conspirator, done and made after the "common criminal design" is accomplished or abandoned, as against his coconspirator. (*Carter v. State,* 106 Ga. 372[3]; *Byrd v. State,* 68 Ga. 661; *Scott v. State,* 30 Ala. 503; *People v. Opie,* 123 Cal. 294. See, also, *People v. Ward,* 77 Cal. 113; *People v. Winters,* 125 Cal. 325; *O'Neal v. State,* 14 Tex. App. 582; *McFadden v. State,* 28 Tex. App. 241; *Allen v. State,* 12 Lea, 424.)

7. The defendant while on the witness stand was asked by his counsel the following question: "After the death of Mr.

---

[3] 71 Am. St. Rep. 262.

Fuller did you make a statement to anyone that this document was in existence; and if you did, how soon after and to whom did you make such statements?" To which the witness answered: "Well, I made the statement to several people. I think I told Mr. White. I told several people right after he died." Following this answer, and without any motion to strike out, the prosecution objected to the evidence as irrelevant, immaterial, and incompetent. After argument and a recess of the court this objection was sustained. Waiving the question of whether the evidence is shown to have been excluded, the defendant had already testified to the existence of the will from a time prior to the death of Fuller, and we cannot see how his testimony as to a statement made by him after the death of Fuller showing the existence of the will can add anything to the force of his evidence. Certainly, such testimony is inadmissible under the general rule excluding self-serving declarations, and no exception to this rule has been called to our attention under which it might be admitted. For all that appears to the contrary, the defendant may have had the same motive and purpose to manufacture evidence the day after Fuller died that he and his confederates had at any later date to manufacture a will. To make it admissible at all it must be shown that the corroborating statement sought to be put in evidence was made at a time when defendant had no motive or interest to fabricate such statement; here, however, there is nothing to show when the criminal design was first conceived. (*Mason v. Vestal*, 88 Cal. 396[4]; *People v. Doyell*, 48 Cal. 85.)

8. That the deceased Fuller in his lifetime declared an intention to remember Mrs. Houseworth for the kindness she had shown him was not competent evidence in this case. The defendant is charged with false swearing as to the execution of the will. The declarations of the deceased are not admissible on questions pertaining solely to the formal execution of the will.

9. The petition for the probate of the will sets forth that petitioner believes the will "to have been wholly written, dated, and signed by said testator." It also states facts showing that

---

[4] 22 Am. St. Rep. 310.

the will was executed and attested as wills, other than olographic, are required by law to be executed and attested. The decree of the court was in effect that the will was olographic and also that it was executed as a nonolographic will should be. Therefore, whatever view we may take as to the sufficiency of the allegation of the petition to show that the will was olographic, the defendant's testimony in the probate court was material to the matter before it beyond any question, and the court at the trial herein properly refused to instruct the jury that it was not material.

10. The defendant was sworn in the probate proceeding in the usual form, as shown by the evidence; but were it otherwise, it would be no defense in this action. (Pen. Code, sec. 121.)

11. The record of the probate proceeding is the evidence upon which we must rely to determine whether the court had jurisdiction. (2 Bishop's New Criminal Procedure, sec. 933b.) The decree admitting the will to probate was placed in evidence, and it contains all the necessary recitals to show that the court had jurisdiction in the matter. (Wharton's Criminal Evidence, sec. 602a.) The petition for probate filed, as it is shown to have been, gave the court jurisdiction of the subject matter of the action, and even if it be admitted that the affidavit of publication of the notice of hearing was defective, the court had the power to hear the evidence as to the will and permit a new affidavit of publication to be filed thereafter if necessary. In *Smith v. State*, 31 Tex. Cr. Rep. 315, the jury had not been sworn at the time of the alleged perjury, and it was held that the correct rule is "that if the court has jurisdiction of the subject matter of the suit, and the oath is required by law, irregularities in the proceeding will not prevent perjury." The court properly refused to instruct that there was no evidence that the court had jurisdiction of the proceeding.

12. The court refused to give defendant's requested instruction No. 11, which reads as follows:

"If you do not believe the testimony given by the witness Garner, or if you are not convinced beyond all reasonable doubt

of the truth of what he has testified to, you must acquit the
defendant."

The witness Garner testified to facts and circumstances tend-
ing to show the defendant's guilt, other than the direct evi-
dence he gave of the "falsity of the testimony charged to be
perjury." The rule laid down in section 1968 of the Code of
Civil Procedure, requiring direct evidence in perjury cases,
means that there must be direct evidence only as to the falsity
of the testimony charged to be perjury. (2 Bishop's New
Criminal Procedure, sec. 929.) Therefore, if the jury believed
the direct evidence of Garner given on this point, they might
doubt his testimony on other points and still be entirely satis-
fied from all the evidence in the case that the defendant was
guilty, and thus be warranted in convicting him. The rule in
respect to the matter, stated as broadly as could properly be
asked, was given by the court in defendant's requested instruc-
tion No. 9. We can see no error, therefore, in the refusal to
give the offered instruction No. 11. The same may be said of
instruction No. 15 refused by the court, which reads as follows:
"If you distrust the testimony of the witness Garner you must
acquit the defendant." The court had already told the jury
that "there must be the direct testimony of at least one cred-
ible witness, and that testimony to be sufficient must be posi-
tive and directly contradictory of the defendant's oath," etc.
Here the word "credible" is added to the statute at the re-
quest of defendant; surely, he ought to be satisfied with this.
It is not a rule of law that an accomplice is never to be be-
lieved, nor is it the rule that he can never be the one witness
giving the direct and positive evidence required by section 1968
of the Code of Civil Procedure in cases of perjury. His credit
and the weight of his testimony is a question for the jury
(*People v. Gibson*, 53 Cal. 601) in such cases as in others, ex-
cept that there is a positive rule of law that the direct evidence
of one witness must always be corroborated in perjury cases to
warrant conviction.

13. The two instructions given by the court as to the evi-
dence of the defendant's good character were as full and favor-
able to defendant as he could reasonably ask, and there was
no error in refusing to add the third instruction on that sub-

CXXXI. Cal.—17

ject. Everything stated in the rejected instruction was plainly implied in the two given.

14. The defendant requested the court to instruct the jury that the testimony of the witness Wilson as to certain oral admissions of defendant ought to be viewed with caution, and also that the testimony of the witness Swearingen as to alleged oral admissions made by Mrs. Houseworth ought to be viewed in the same way. These two instructions were refused; but the court did give, at the request of defendant as the record shows, an instruction embodying, practically, the whole of section 200 of 1 Greenleaf on Evidence, cautioning the jury against testimony of verbal admissions and statements. An instruction in effect the same as the one last referred to was held by this court in *Kauffman v. Maier*, 94 Cal. 269, to have been given in disregard of "the provision of the constitution that 'judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law.'" The decision referred to was undoubtedly correct, and an instruction of that kind should not be given for the reasons stated in that case. If any instruction is given on the subject of oral admissions it should be confined as nearly as possible to the language of subdivision 4 of section 2061 of the Code of Civil Procedure. However, the defendant cannot be heard to complain of the instruction here for the reason that it was given at his own request, and having been so given it covered the subject treated of in the two instructions refused and rendered them unnecessary. The defendant is not entitled to an instruction directed to the evidence of a particular witness and naming him, where a general instruction has been given covering the point sought. (*People v. Patterson*, 124 Cal. 102.) The defendant complains of the instruction, and seems to treat it as having been given of the court's own motion, but a careful inspection of the transcript will show the defendant's mistake.

15. The jury were instructed at some length as to the defendant's right to the benefit of the presumption of innocence in the second and third of the unnumbered instructions and in the tenth and thirty-fifth of the numbered instructions, and the subject did not need the amplification found in the instructions numbered 33 and 34 and refused by the court.

16. The court refused to give the following instruction: "You cannot convict the defendant unless each of you is entirely satisfied from the evidence before you that defendant is guilty beyond all reasonable doubt. In determining the question it is the duty of each juror to decide the matter for himself, and not to compromise or sacrifice his views or opinions of the case in deference to the views or opinions of others." There was no error in refusing this instruction. Juries are impaneled for the purpose of agreeing upon verdicts if they can conscientiously do so. They are admonished at each recess of the court not to form an opinion as to the merits of the case until it shall be finally submitted to them, and when it is so submitted it is the duty of jurors to deliberate and consult together with the view of reaching an agreement if they can without violence to their individual understanding of the evidence and instructions of the court. They should not be lectured by the court to make them strong and steadfast in their individual opinions; neither should they be exhorted to reach an agreement; and while it is probably true that "each juror must decide the matter for himself," yet he should do so only after a consideration of the case with his fellow jurors, and he should not hesitate to "sacrifice his views or opinions of the case" when convinced that they are erroneous, even though in so doing he defer "to the views or opinions of others." There is a marked distinction between this instruction and the one discussed in *People v. Dole*, 122 Cal. 495.[5]

17. Defendant complains that the jury were not instructed, as requested in instruction 39, that a preponderance of evidence would be insufficient to justify a conviction. Besides instructions given that the burden of proof is on the prosecution, and that the jury must be entirely satisfied of defendant's guilt before they can convict, we find the following in the fourth unnumbered instruction: "If, upon such proof, there is a reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal, for it is not sufficient to establish a probability, though a strong one, arising from the doctrine of chances that the fact charged is more likely to be true than the contrary; but the evidence must establish the truth of the

[5] 68 Am. St. Rep. 50.

fact to a reasonable and moral certainty," etc. This is a very plain statement many times approved, and certainly it is the equivalent of an instruction that no mere preponderance of evidence would warrant a conviction; and while the instruction 39 was undoubtedly sound, and ordinarily should be given when requested by the defendant, yet in view of the very full instructions which were given substantially covering the important points contained in that instruction we see no error in its refusal.

18. It was proper to amend defendant's offered instruction 44 as to the corroboration necessary in perjury cases by striking out the word "strong" before the words "corroborating circumstances." The amendment placed the instruction in accord with the statute. (Code Civ. Proc., sec. 1968.)

19. The court refused to give instruction 45 requested by defendant, which reads as follows: "The defendant cannot be convicted if you do not find from the evidence before you, and beyond all reasonable doubt in your mind, that when he gave the testimony set forth in the indictment he did so with a criminal intent. If, after considering all the evidence in this case, you entertain a reasonable doubt as to whether defendant did give such testimony with a specific criminal intent, then you must return a verdict that he is not guilty."

In the fifth unnumbered instruction the court gave the definition of perjury contained in section 118 of the Penal Code, and in instruction 50 the jury were told: "But you are required to determine whether or not such testimony was false, and known by the defendant to be false at the time it was delivered, and that said testimony was given willfully and contrary to the oath he had taken." The words "a specific criminal intent" would need some defining to make them perfectly intelligible to a jury in the connection in which they are used in the rejected instruction. We understand that the "intent to swear falsely" is the "specific criminal intent" that must be shown to establish the crime of perjury. (2 Bishop's New Criminal Law, sec. 1048.) If the testimony was "known by the defendant to be false at the time it was delivered," and it "was given willfully and contrary to the oath he had taken," it would certainly be given with "intent to swear falsely." We

think the instructions given on the subject rendered the rejected instruction unnecessary.

20. The court gave two instructions on the subject of corroboration in perjury cases. In instruction 9 the jury was told: "There must be the direct testimony of at least one credible witness, and that testimony to be sufficient must be positive and directly contradictory of the defendant's oath; in addition to such testimony, there must be either another such witness or corroborating circumstances established by independent evidence, and of such a character as clearly to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence. Otherwise the defendant must be acquitted."

In instruction 17 the court said to the jury: "The additional evidence must be at least strongly corroborative of the testimony of the accusing witness in this case, the witness Garner." In addition to these two instructions the defendant requested the following: "You are instructed that there must be something in the corroborative evidence which makes the facts sworn to by defendant not true, if the corroborative evidence be true also. If the corroboration does not go to that extent, the defendant must be acquitted."

There was no error in refusing the instruction last quoted. The former instructions were sufficient on the question of corroboration.

21. Instructions 50, 50½, and 52 are complained of, but the case cannot be reversed on account of the giving of these instructions for several reasons—the first being that the record shows them to have been given at the request of defendant; and we think we should be guided by this record in the matter notwithstanding that in the briefs of both parties these instructions are treated as if not given at defendant's request. Again, the last instruction mentioned is free from error. (*People v. Dolan,* 96 Cal. 315.) And there is nothing in either of the other instructions on which the case should be reversed, if it is read and construed in connection with all the other instructions given. (*People v. Chun Heong,* 86 Cal. 329.)

22. The verdict is not contrary to the instructions nor is it unsupported by the evidence, but, on the contrary, the case made against the defendant was a strong one, as may be seen by

a reference to the brief summary of the evidence of the prosecution contained in this opinion. Against this evidence the defendant was compelled to rely almost exclusively on his own uncorroborated testimony and his good character. The jury were the judges of the weight of the evidence, and we see no reason to interfere with their verdict.

23. The defendant excepted to the remark of the assistant district attorney to the jury, which reads as follows: "The jury in the will contest over people's exhibit 'A,' within an hour after they had retired, brought in a verdict that people's exhibit 'A' was not a valid will." This statement was improper and should not have been made, but still we cannot see how the defendant could be injured by it when it was virtually conceded by him at the trial that the will was bogus. When it was sought to be shown that the will was not in the handwriting of the deceased Fuller, the defendant admitted the fact, and of course this admission involved the signature to the instrument. In addition to this it was shown by the evidence, without conflict, that the will including the signature was in the handwriting of Mrs. Houseworth. This, with the other evidence tending in the same direction, established the fact that "exhibit 'A' was not a valid will" beyond any question; and the assertion that a jury had so found could add nothing to defendant's burden.

24. Several other exceptions were taken to statements of the prosecuting attorneys in their arguments to the jury, but we see nothing in any of them calling for special notice. It is deemed sufficient to say that they are free from prejudicial error under the recent decision of this court in *People v. Molina*, 126 Cal. 505.

25. A number of objections to the action of the court in refusing instructions have been ignored in this opinion for the reason that after a careful examination of them the conclusion was reached that they were entirely devoid of merit. It should not be a matter of great surprise that where upward of fifty instructions are requested some of them should be refused.

The judgment and order should be affirmed.

Haynes, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Garoutte, J., McFarland, J., Van Dyke, J., Harrison, J.

Rehearing denied.