[No. F012930. Fifth Dist. Mar. 28, 1991.]

THE PEOPLE, Plantiff and Respondent, v.
CALVIN CARL DOLLAR, Defendant and Appellant.

COUNSEL

Alex Veylupek, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Jane N. Kirkland and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## HARRIS, J.—

### INTRODUCTION

After a jury trial, appellant was found guilty on September 7, 1989, of one count of threatening a witness in violation of Penal Code section 139 and a second count of misdemeanor battery in violation of Penal Code section 243, subdivision (a).[1] In a bifurcated proceeding, the trial court found appellant's prior convictions to be true. Appellant was sentenced to state prison and ordered to pay restitution.

### FACTS

The parties stipulated that appellant had previously been convicted in 1986 of committing a lewd and lascivious act on Reannon L., a minor.

During the daylight hours of May 12, 1989, Reannon was playing with her friend at North Beardsley Park in Kern County. Reannon went into the restroom. When she exited, appellant grabbed her from behind. In the process of grabbing Reannon, appellant ripped her shirt. Reannon screamed. She looked back and recognized appellant as someone she had known. She tried to pull away and appellant subsequently let her go. As Reannon ran toward her friend, appellant yelled to her, "I'll get you soon, bitch."

Reannon's friend corroborated that she saw Reannon running away from appellant and screaming. The friend believed Reannon was scared at the time she was running away from appellant. The friend also testified that Reannon's shirt was ripped.

Appellant testified on his own behalf. He denied committing the charged offense. He further denied he had ever gone to North Beardsley Park on May 12, 1989. This testimony was corroborated at trial by appellant's sister, Karen Dollar.

During its instructions to the jury, the trial court recited the following special instruction regarding appellant's violation of section 139:

"Now, any person who has been convicted of the felony offense of committing a lewd act with a child and thereafter willfully and maliciously

---

[1] All statutory references are to the Penal Code.

communicates to a witness to or a victim of the crime for—the crime of which the person was convicted, a credible threat to use force or violence upon that person, or that person's family, shall be guilty of a violation of Penal Code section 139, a felony.

"As used in this section, a credible threat is a threat made with the intent that—I'm sorry, with the intent and the apparent ability to carry out the threat, so as to cause the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family.

"Now, as used in this instruction, malice means an intent to vex, annoy, harm or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice."

The trial court then defined the terms witness and victim. It then gave general battery instructions. At the end of the battery instructions, the trial court recited the following general intent instruction stating that it applied to "the crimes charged." The general intent instruction given to the jury reads as follows:

"Now, in the crimes charged in the Information, there must be a—there must exist a union or joint operation of act or conduct and general criminal intent.

"To constitute general criminal intent, it is not necessary that there should exist an intent to violate the law.

"When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful."

In his closing argument, the deputy district attorney defined a credible threat as one made with the intent and apparent ability to carry out the threat so as to cause the target of the threat to reasonably fear for his or her safety. The deputy district attorney made this argument immediately after arguing that appellant had battered Reannon as soon as he grabbed her and tore her shirt.

DISCUSSION

IS SECTION 139 A GENERAL OR SPECIFIC INTENT CRIME?

Appellant contends that section 139 is a specific intent crime. Appellant argues that it was error for the trial court to give the general intent

instruction with regard to this Penal Code section because the jury could have convicted appellant after having found he only had the general intent, and not the specific intent, "to carry out the threat."[2] If section 139 is a general intent crime, then the trial court's use of the general intent instruction was not error. If, on the other hand, section 139 is a specific intent crime, there is a conflict in the jury instructions.[3]

The People contend that the issue of whether or not section 139 is a general or a specific intent crime is resolved by the use of the terms "willfully" and "maliciously" in subdivision (a) of section 139. ■ The words willfully, knowingly, and maliciously are usually expressions of general criminal intent when used in a penal statute. (§ 7, subd. 1; *People* v. *Williams* (1980) 102 Cal.App.3d 1018, 1028-1029 [162 Cal.Rptr. 748].)

The People, however, read too much into this broad rule of statutory construction. Other specific intent crimes also use the term "willfully." Perjury, a violation of section 118, is a specific intent crime that uses the term "willfully." (See *People* v. *Rodley* (1900) 131 Cal. 240, 260 [63 P. 351]; *People* v. *Viniegra* (1982) 130 Cal.App.3d 577, 584 [181 Cal.Rptr. 848].) Committing a lewd and lascivious act upon a child in violation of section 288 is another specific intent crime in which the term "willfully" appears. (See *People* v. *Worthington* (1974) 38 Cal.App.3d 359, 368 [113 Cal.Rptr. 322].)

Certain specific intent crimes use the term "maliciously." Examples are section 605, subdivision 3 [maliciously cutting down or removing any tree upon which certain landmarks have been made with intent to destroy the marks] and section 607 [willfully and maliciously injuring or destroying hydraulic power, reclamation or irrigation facilities with intent to destroy the facilities]. The People's reliance on the terms "willfully" and "maliciously" to resolve the issue of the kind of intent necessary to effectuate a violation of section 139 is not dispositive.

---

[2] We observe that the quoted language is appellant's contention as to the focus of the required intent. As we will later discuss, we conclude that the requisite intent of section 139 is not the intent "to carry out the threat" but the intent to cause reasonable fear.

[3] Subdivisions (a) and (c) of section 139 are relevant to our inquiry. Those subdivisions read as follows:

"(a) Except as provided in Sections 71 and 136.1, any person who has been convicted of any felony offense specified in Section 12021.1 who willfully and maliciously communicates to a witness to, or a victim of, the crime for which the person was convicted, a credible threat to use force or violence upon that person or that person's immediate family, shall be punished by imprisonment in the county jail not exceeding one year or by imprisonment in the state prison."

"(c) As used in this section, 'a credible threat' is a threat made with the intent and the apparent ability to carry out the threat so as to cause the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family."

■ The distinction between general and specific intent crimes was thoroughly reviewed by the California Supreme Court in *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370]. There, the Supreme Court explained that when the definition of a crime employs only the description of an act, without reference to any intent to accomplish some further act or to achieve some future consequence, courts ask whether the defendant intended to do the proscribed act. Such intention is deemed to be general criminal intent. Where the definition refers to the defendant's intent to accomplish a further act or to achieve an additional consequence, the crime is said to be one of specific intent. (*Ibid.*)

General intent crimes proscribe particular acts. For such crimes, reference is usually not made to the actor's intent to achieve a further act or a future consequence concerning the restricted action. (See *People* v. *Lopez* (1986) 188 Cal.App.3d 592, 598 [233 Cal.Rptr. 207].) The accompanying intent to accomplish a further act is inherent in making an offense a specific intent crime. (*People* v. *Daniels* (1975) 14 Cal.3d 857, 861 [122 Cal.Rptr. 872, 537 P.2d 1232].)

A threat as defined in section 139 would be a general intent crime if it is merely the threat itself that is being proscribed by the statute. If section 139 falls within the category of general intent crimes, it cannot proscribe additional future goals or consequences beyond the act of making the threat itself.

Appellant contends that the definition of threat as set forth in subdivision (c) of section 139 makes this section a specific intent crime. Subdivision (a) of section 139 requires that the threat be credible. Subdivision (c) of the same section defines a credible threat as a threat made with the intent and apparent ability to carry out the threat. The underlying purpose of the threat must be "to cause the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family."

■ Section 139 draws a distinction between an idle threat, a joke or a threat that no one would believe, and a credible threat, which the section defines. For a threat to be credible, the criminal actor must have the apparent ability to carry out the threat and must have the additional criminal intent to cause the victim of the threat fear for him or herself or for his or her immediate family. The communication of the threat itself is the act. The intent to create a future or additional consequence is the intent to cause the victim to feel fear or intimidation. Under the *Hood* analysis, to be criminally liable under section 139 the criminal actor must have the specific intent to cause the victim fear or intimidation.

■ This court analyzed an analogous specific intent issue concerning threats to dissuade a witness from testifying, a violation of section 136.1, subdivision (c)(1), in *People* v. *Ford* (1983) 145 Cal.App.3d 985 [193 Cal.Rptr. 684]. This Penal Code section is similar to section 139. It also proscribes malicious threats on witnesses or victims. We concluded that section 136.1, subdivision (c)(1) was a specific intent crime that was committed whether or not the witness did or did not testify. (*Id.* at pp. 989-990.)

■ Thus, the requisite specific intent necessary to violate section 139 is not the intent to carry out the threat. It is the intent to cause the target of the threat reasonable fear. Once a credible threat is made with the specific intent to cause the victim reasonable fear, the intent element of section 139 has been satisfied. The crime is complete regardless of the defendant's subjective intent to actually carry out the threat. We hold that section 139 requires the specific intent to cause the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family.

This does not, however, end our inquiry. We must still determine whether or not use of the general intent instruction was prejudicial to appellant's cause.

### *Was Appellant Prejudiced?*

■ Where two inconsistent instructions are given and one is correct and the other is wrong, an appellate court cannot speculate which one the jury followed. (*People* v. *Deloney* (1953) 41 Cal.2d 832, 839-840 [264 P.2d 532]; *People* v. *Carmen* (1951) 36 Cal.2d 768, 778 [228 P.2d 281].) Because there is a conflict between the two instructions, we cannot speculate that the jury gave the general intent instruction the benign meaning used for it by the People. (*People* v. *Henderson* (1980) 109 Cal.App.3d 59, 62, fn. 3 [167 Cal.Rptr. 47].)

The jury was properly instructed with a special instruction by the trial court on how to construe section 139 and more specifically how to construe the term "credible threat." The jury was also given CALJIC No. 3.30, the general intent instruction. Though CALJIC No. 3.30 was consistent with the trial court's instructions concerning battery, its application was not so limited. Appellant was charged both with battery and with making a threat. Battery is a general intent crime; making the threat is not. The general intent instruction read to the jury states that "in the *crimes* charged in the Information, . . . there must exist a union or joint operation of act or conduct and general criminal intent." (Italics added.) We cannot distinguish which instruction the jury followed in arriving at its conclusion that appellant was guilty of the threat.

We must still resolve the issue of whether the error was prejudicial. Appellant argues that the use of inconsistent instructions on the issue of intent is reversible per se citing older California authorities. One recent California authority holds that such error must be deemed prejudicial. (*People* v. *May* (1989) 213 Cal.App.3d 118, 128 [261 Cal.Rptr. 502]; see *People* v. *Anderson* (1983) 144 Cal.App.3d 55, 63 [192 Cal.Rptr. 409].)

Other authorities, however, hold that the harmless error standard of *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065] can be applied to malice instructions in murder cases which are instructions going to the criminal actor's intent. (*Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101]; *People* v. *Lee* (1987) 43 Cal.3d 666, 675-676 [238 Cal.Rptr. 406, 738 P.2d 752].) Where aiding and abetting instructions are erroneously given contrary to *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318], the California Supreme Court has refused to apply the reversal-per-se rule but has instead applied the *Chapman* standard of review. (*People* v. *Bunyard* (1988) 45 Cal.3d 1189, 1226-1227 [249 Cal.Rptr. 71, 756 P.2d 795].)

In *People* v. *Herbst* (1986) 186 Cal.App.3d 793, 802-803 [233 Cal.Rptr. 123], our court also reviewed error in a *Beeman* instruction regarding the criminal intent of an aider and abettor. We followed the *Chapman* standard of review. (Cf. *People* v. *May, supra,* 213 Cal.App.3d 118, 128-129; *People* v. *Lemus* (1988) 203 Cal.App.3d 470, 480 [249 Cal.Rptr. 897].) Instructional error on the issue of aiding and abetting a crime is analogous to instructional error on the issue of whether a crime requires general or specific criminal intent. There is no indication that the instructional error here was fundamentally unfair.

We follow the *Herbst* analysis and measure the degree of error not under a per se standard of reversal, but rather under the *Chapman* standard of review. Thus, we must determine whether it is clear beyond a reasonable doubt whether the result below would have been different absent the error.

■ The trial court's instructional error was critical. It affected the intent element of section 139. The facts against appellant, however, were very strong. The victim of the crime had known appellant for a long period of time before he was convicted of molesting her in 1986. When she saw him again at the park that day, he grabbed her, tearing her shirt. She had an opportunity to see him at an extremely close range. He was holding her when she first viewed him.

Furthermore, and most importantly, appellant's threat to the victim was not equivocal or ambiguous. He used an epithet in describing the victim and

he told her he would get her. The victim was so frightened that she screamed at least once after seeing appellant. The very act of grabbing the victim so forcibly that he tore her garment indicates that the threat was credible and that the appellant intended to frighten and intimidate the victim. Appellant's threat leaves little to the imagination.

Additionally, the deputy district attorney, in making his argument to the jury, stated the jury would have to find that the threat against the victim was a credible threat made with the intent and apparent ability to carry out the threat so as to cause the victim of the threat to reasonably fear for her safety. Though the prosecution's argument may not be enough to conclusively prove that the jury applied the correct instruction in measuring appellant's intent, it greatly enhances the probability that the jury was not misled by the conflicting instructions regarding specific and general intent.

Given the strength of the facts against appellant, we conclude beyond a reasonable doubt the result in the trial below would not be different absent the conflicting instructions regarding whether or not appellant had to have a specific intent or general criminal intent to be found guilty of section 139.

### DISPOSITION

The judgment is affirmed.

Best, P. J., and Ardaiz, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 26, 1991.