[No. C013808. Third Dist. July 18, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY ELGIN STARK, Defendant and Appellant.

[Opinion certified for partial publication.*]

*See footnote 1, *post*, page 1181.

COUNSEL

Cara DeVito, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert A. Anderson, Assistant Attorney General, J. Robert Jibson and Janine R. Busch, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**PUGLIA, P. J.**—A jury convicted defendant of willful diversion of construction funds (Pen. Code, § 484b) and found the taking exceeded $25,000 (Pen. Code, § 12022.6, subd. (a)). Imposition of sentence was suspended and defendant was granted probation for five years.

In the published part of this opinion we shall reject defendant's contention that the trial court erred in instructing the jury that willful diversion of construction funds is a general intent crime.[1] Finding no error, we shall affirm.

In 1989, Doctors Steven Johnson and Douglas Martin contracted with defendant, doing business as Stark Construction, to build a medical facility for approximately $350,000. The project was begun in October 1989, and as various phases of the project were completed, defendant received partial payment from a construction loan obtained by the doctors. With these payments defendant was to pay the subcontractors and materialmen who had either performed work or provided materials for the job.

By February 15, 1990, defendant had received three draws from the construction loan, totalling about $245,000. On March 1, the doctors received several calls from subcontractors and materialmen informing the doctors they had not been paid. The doctors discussed the matter with defendant and it was agreed the doctors would thereafter write the checks to the subcontractors and materialmen. The building was completed on March 1. On March 16 the doctors issued approximately $70,000 in checks to subcontractors and material suppliers from the fourth draw.

When the doctors continued to receive calls from people who were supposed to have been paid, but had not been paid, from the first three draws, they again confronted defendant. Defendant informed the doctors he had been experiencing financial difficulties on other jobs and some of the money from the medical building project had been spent to defray costs incurred for those jobs. Defendant promised to repay the money as the other jobs progressed.

Months later, when money owed subcontractors and material suppliers still had not been paid, the doctors contacted the Contractor's State License Board and the district attorney. The doctors estimated defendant's diversion of the funds cost them approximately $46,000.

Defendant testified, admitting he used the money from the medical building project to defray costs on some of his other jobs. However, he always intended to pay the money back.

I

Penal Code section 484b provides in pertinent part: "Any person who receives money for the purpose of obtaining or paying for services, labor,

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is ceritfied for publication with the exception of parts II and III.

materials or equipment and willfully fails to apply such money for such purpose by either willfully failing to complete the improvements for which funds were provided or willfully failing to pay for services, labor, materials or equipment provided incident to such construction, and wrongfully diverts the funds to a use other than that for which the funds were received, shall be guilty of a public offense . . . ."

Relying on *People* v. *Dollar* (1991) 228 Cal.App.3d 1335 [279 Cal.Rptr. 502], and arguing here as he did in the trial court, defendant contends Penal Code section 484b defines a specific intent crime. Therefore, he continues, the trial court prejudicially erred when it instructed the jury the offense was one requiring only general criminal intent. We conclude Penal Code section 484b defines a general intent crime and that *Dollar* is inapposite.

In *People* v. *Whitfield* (1994) 7 Cal.4th 437 [27 Cal.Rptr.2d 858, 868 P.2d 272], the court reiterated the general rule for differentiating between specific and general criminal intent offenses: "[As a] general rule '[w]hen the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.' " (At p. 449, quoting *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370].)

Defendant concedes there was a wrongful diversion of the construction funds and that this act requires only general criminal intent, i.e., merely the intent to do the act. He contends there must exist in the mind of the defendant the additional intent either to fail to complete the work or, as in this case, not to pay either material suppliers or subcontractors. Therefore, defendant argues, the offense is one of specific intent.

The only "act" described by Penal Code section 484b is the wrongful diversion, i.e., "a diversion to a use other than bona fide project costs" (*People* v. *Butcher* (1986) 185 Cal.App.3d 929, 938 [229 Cal.Rptr. 910]), of funds accepted for one or more of the specific purposes set forth in Penal Code section 484b. Nothing in section 484b suggests that when the defendant wrongfully diverts the funds that he intend to do a further act or to achieve a future consequence. The offense is complete if the wrongful diversion was the cause of failure either to complete the improvement or, as here, to pay for services, labor, materials or equipment. It is immaterial

whether defendant intended that there be a failure either to complete the project or to pay subcontractors or material suppliers. Consequently, the offense defined by section 484b is one of general criminal intent, and the trial court did not err in so instructing the jury.

*People* v. *Dollar, supra,* does not aid defendant. In that case the accused, who had previously been convicted of committing a lewd and lascivious act upon the victim, was thereafter convicted of threatening her (Pen. Code, § 139) after he had unsuccessfully attempted to grab her and, as she was running away, yelled, "I'll get you soon, bitch." (228 Cal.App.3d at p. 1338.) On appeal the accused contended the trial court erred in instructing the jury the offense was a general rather than specific intent crime.

In pertinent part, Penal Code section 139 reads: "(a) Except as provided in Sections 71 and 136.1, any person who has been convicted of any felony offense specified in Section 12021.1 who willfully and maliciously communicates to a witness to, or a victim of, the crime for which the person was convicted, a credible threat to use force or violence upon that person or that person's immediate family, shall be punished by imprisonment in the county jail not exceeding one year or by imprisonment in the state prison . . . . [¶] . . . [¶] (c) As used in this section, 'a credible threat' is a threat made with the intent and the apparent ability to carry out the threat so as to cause the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family."

In concluding the offense was one requiring a specific intent, the court stated: "A threat as defined in section 139 would be a general intent crime if it is merely the threat itself that is being proscribed by the statute. If section 139 falls within the category of general intent crimes, it cannot proscribe additional future goals or consequences beyond the act of making the threat itself. [¶] . . . [¶] Section 139 draws a distinction between an idle threat, a joke or a threat that no one would believe, and a credible threat, which the section defines. For a threat to be credible, the criminal actor must have the apparent ability to carry out the threat and must have the additional criminal intent to cause the victim of the threat fear [*sic*] for him or herself or for his or her immediate family. The communication of the threat itself is the act. The intent to create a future or additional consequence is the intent to cause the victim to feel fear or intimidation." (228 Cal.App.3d at p. 1341.)

As noted above, in cases arising under section 484b it is immaterial whether at the time of the wrongful diversion the defendant intends or desires that the improvement not be completed or the suppliers and subcontractors not be paid. To violate the statute all that it required is the wrongful

diversion of the funds, which means not applying the funds for the purpose for which they were disbursed, and that the diversion be the cause of at least one of the described failures. In contrast, a violation of Penal Code section 139 requires the making of the threat coupled with the intent to cause fear in the target of the threat, thus defining an additional mental state not required by Penal Code section 484b. We conclude *Dollar* is of no assistance to defendant.

## II, III*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Sparks, J., and Sims, J., concurred.

---

*See footnote 1, *ante*, page 1181.