[No. D005206. Fourth Dist., Div. One. Aug. 1, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
TEODORO LEMUS, Defendant and Appellant.

[No. D005766. Fourth Dist., Div. One. Aug 1, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN LEMUS, JR., Defendant and Appellant.

472

**COUNSEL**

Jerome P. Wallingford and William K. Mueller, under appointments by the Court of Appeal, for Defendants and Appellants.

Harvey R. Zall, State Public Defender, Therene Powell, Deputy State Public Defender, and Jack Funk as Amici Curiae on behalf of Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Peter Quon, Jr., Pat Zaharopoulos and Gil P. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KREMER, P. J.—Defendants Teodoro Lemus and Juan Lemus, Jr., appeal their convictions after a jury found them both guilty of assault with a deadly weapon (Pen. Code,[1] § 245) and Teodoro guilty of false imprisonment (§ 236). Both Teodoro and Juan contend the trial court erred in failing to instruct the jury regarding self-defense and in entering convictions of lesser included offenses after the jury had acquitted them of the greater charges. Juan further contends the evidence was insufficient to support the jury's verdict. We conclude Teodoro's and Juan's contentions are correct as to the failure of the court to instruct on self-defense. Accordingly, we reverse on that ground.

### FACTUAL AND PROCEDURAL BACKGROUND

We recount the facts of the case in the light most favorable to the judgment.

At about 4 p.m. on February 26, 1986, shortly after finishing work in the asparagus fields, Silviano Franco visited a bar in Calexico, California. While there, Franco played several games of pool and drank beer until he became intoxicated. At about 7 p.m., Mary Helen Hernandez, Teodoro's wife, entered the bar. Before going to the bar, Mary Helen had quarreled with Teodoro and she was angry with him. Upon arriving at the bar, Mary Helen sat and drank beer with Franco. She was a former lover of Franco's and had previously had a child by him.

A little while later, Teodoro entered the bar alone, drank beer for about 10 minutes, and left. Within 20 minutes, Teodoro reentered the bar, this time accompanied by his brother, Rigoberto Lemus, and his cousin, Juan Lemus, Jr., who was holding a handgun. Together, they approached the table where Mary Helen and Franco were seated. Teodoro hit Franco in the face and Franco tried unsuccessfully to stand up. Rigoberto kicked Franco in the legs, causing him to fall back into the chair. Franco again tried to get to his feet and Teodoro stabbed him three times, in the chest, elbow, and eyebrow, with a lettuce knife. Mary Helen picked up a cuestick and attempted to strike Juan but did not because she was afraid he would shoot her. Teodoro, Juan, and Rigoberto then left the bar, threatening Mary Helen that she would be next if she called the police.

A week later, at 7 p.m. on March 4, 1986, Mary Helen saw Teodoro on a Calexico street. Knowing he was wanted for questioning regarding the

---

[1] All statutory references are to the Penal Code unless otherwise specified.

stabbing incident, she called the police. A few minutes later, she again saw Teodoro, this time near the Mexican border. She followed him into an alley and attempted to detain him until the police arrived. When she caught up with Teodoro, he forced her, at gunpoint, to get on a bicycle he was riding. With the gun in her back, he forced her to accompany him, still riding the bicycle, across the border to his sister's house in Mexicali. He kept her there against her will until March 6, 1986, when she was able to escape and return to Calexico.

Teodoro and Juan were charged as follows: in count one, both were charged with attempted murder (§§ 664, 187) with an allegation Teodoro personally used a deadly weapon (a knife) (§ 12022, subd. (b)). It was further alleged regarding count one that Teodoro inflicted great bodily injury within the meaning of section 12022.7. In count two, Juan was charged with assault with a firearm (§ 245, subd. (a)(2)) with an allegation he personally used a firearm within the meaning of section 12022.5. In count three, Teodoro was charged with kidnapping (§ 207, subd. (a)).

When the jury began its deliberations, it was given the following verdict forms, in pertinent parts, as to both defendants regarding count one:

"Guilty of . . . ATTEMPTED MURDER . . . as charged in Count I . . . ."

"Guilty of . . . ATTEMPTED VOLUNTARY MANSLAUGHTER . . . , a lesser included offense to the crime charged in Count I . . . ."

"Guilty of . . . ASSAULT WITH A DEADLY WEAPON, . . . a lesser included offense to the crime charged in Count I . . . ."

"NOT Guilty of Count I."

As to count three, regarding only Teodoro, the jury was given the following verdict forms, in pertinent parts:

"Guilty of . . . KIDNAPPING . . . as charged in Count III . . . ."

"Guilty of a misdemeanor . . . FALSE IMPRISONMENT, a lesser included offense to the crime charged in Count III . . . ."

"NOT Guilty of Count III."

The court instructed the jury that only one verdict form could be signed and returned for each count. The court further instructed that if the jury

unanimously agreed the greater charges had not been proven, it could convict on the lesser offenses.

The following verdict forms were returned as to Teodoro: not guilty of count one, guilty of the lesser included offense of assault with a deadly weapon; not guilty of count three, guilty of the lesser included offense of false imprisonment. Both allegations against Teodoro concerning count one were found to be true.

The jury returned the following verdict forms as to Juan: not guilty of count one, guilty of the lesser included offense of assault with a deadly weapon; not guilty of count two. The allegation against Juan concerning count two was found to be untrue.

On count one, Teodoro was sentenced to prison for the middle term of three years, plus a three-year enhancement under section 12022.7; on count three, one year of local custody was ordered to run concurrently with the sentence imposed on count one. The court, however, ordered him housed in the California Youth Authority pursuant to Welfare and Institutions Code section 1731.5, subdivision (c). Juan was sentenced to three years in prison on count one; the sentence was suspended and he was granted probation on the condition he serve one year in the county jail.

DISCUSSION

I

Teodoro and Juan contend the trial court erred in refusing to instruct the jury on self-defense as to count one.[2] For reasons discussed below, we agree.

Before 1975, the rule regarding a trial court's duty to instruct was that expressed in *People* v. *Burns* (1948) 88 Cal.App.2d 867 [200 P.2d 134]: "It is elementary that the court should instruct the jury upon every material question upon which there is any evidence deserving of any consideration whatever. [Citations.] The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. [Citations.] That is a question within the exclusive province of the jury. However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true. [Citations.]"

---

[2] Juan was charged as an aider and abettor. He argues that if the jury had been allowed to find Teodoro acted in self-defense, no criminal liability could therefore attach to Juan as an aider and abettor.

(*Id*. at p. 871.) This standard was endorsed by the Supreme Court in *People v. Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281]. The rule was moderated, however, in *People v. Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337], when the court observed that "[a]s an obvious corollary, where there is 'no substantial evidence of diminished capacity' the court does not err in refusing to give instructions based on that defense." (*Id*. at p. 151, quoting *People v. Bandhauer* (1967) 66 Cal.2d 524, 528 [58 Cal.Rptr. 332, 426 P.2d 900].)

In an attempt to clarify the *Carmen* rule and end its misapplication, Justice Tobriner, writing for the court in *People v. Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1], noted that "[m]any cases cite, often without elaboration, language in *Carmen, supra,* 36 Cal.2d 768, or in *People v. Modesto* (1963) 59 Cal.2d 722, 729 [31 Cal.Rptr. 225, 382 P.2d 33] [citations], to the effect that jury instructions must be given whenever *any* evidence is presented, no matter how weak. ▆▆ To the extent that a decision of any court interprets these cases to require instructions without evidence substantial enough to merit consideration, it is disapproved. (See, e.g., *People v. Thornton* (1974) 11 Cal.3d 738, 769, fn. 20 [114 Cal.Rptr. 467, 523 P.2d 267] [citations]; *People v. Sedeno, supra,* 10 Cal.3d 703, 716-717; *People v. Cantrell* (1973) 8 Cal.3d 672, 685 [105 Cal.Rptr. 792, 504 P.2d 1256] [citations].)" (*People v. Flannel, supra,* 25 Cal.3d at pp. 684-685, fn. 12; italics in original.)[3] Nonetheless, " '[d]oubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused.' " (*Id*. at p. 685, quoting *People v. Wilson* (1967) 66 Cal.2d 749, 763 [59 Cal.Rptr. 156, 427 P.2d 820]; see also *People v. Rodriguez* (1969) 274 Cal.App.2d 487, 497 [79 Cal.Rptr. 187].) ▆▆ The question thus becomes whether there was evidence to support Teodoro's version of the case substantial enough to warrant his requested instruction on self-defense.

Teodoro's testimony was in direct conflict with evidence adduced by the People. He testified that he and Mary Helen arrived at Mike's Place together, that he left the bar alone for a short time to exchange dollars for pesos, and when he returned, Mary Helen was sitting with a man he did not know,

---

[3] The Lemuses rely on *People v. Pena* (1984) 151 Cal.App.3d 462 [198 Cal.Rptr. 819] to support their argument that *any* evidence in accord with defendant's theory requires an instruction on that defense. We note the court's failure in *Pena* to heed the admonition of *Flannel* on this point. In *Pena,* the court, relying in part on *People v. Carmen, supra,* 36 Cal.2d at p. 773, held the defendant was entitled to an instruction "on the effect of antecedent threats known by a defendant." (*People v. Pena, supra,* 151 Cal.App.3d at p. 475.) While we agree with that result, we disagree with the court's reasoning to the extent that it relies on *Carmen.* Rather, we believe, that instruction should have been given because there was substantial evidence presented at trial to support defendant's theory of the case, precisely the standard articulated in *People v. Flannel, supra,* 25 Cal.3d at pp. 684-685, footnote 12. (See discussion, *infra.*)

Franco. Teodoro further testified Franco forcibly restrained Mary Helen from going home with Teodoro and that Franco told him she was not going to leave. Teodoro's testimony was that Franco then threatened him, saying "I'm going to f __k you up" and started hitting Teodoro about the face and body. Teodoro testified that while Franco was hitting him, Franco said he was going to kill Teodoro and reached into his pocket and tried to stab Teodoro. Teodoro then pulled a 10-inch lettuce knife from his pocket and stabbed Franco 3 times, in the chest, elbow and eyebrow.

The trial court apparently premised its determination that Teodoro's testimony did not warrant the requested instruction on its belief the testimony was not "substantial." ██ " 'Substantial evidence' in this specific context is defined as evidence which is 'sufficient to "deserve consideration by the jury, i.e., 'evidence from which a jury composed of reasonable men could have concluded' " that the particular facts underlying the instruction did exist.' (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 324 [185 Cal.Rptr. 436, 650 P.2d 311] [citations] quoting from *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1] [citations].)" (*People* v. *Burnham* (1986) 176 Cal.App.3d 1134, 1139-1140 [222 Cal.Rptr. 630].) ██ Although Teodoro's testimony regarding the entire incident was significantly different from that advanced by the People, we cannot agree his testimony was not sufficient to warrant consideration. It appears the court made its own assessment of Teodoro's credibility and, finding it lacking, decided his testimony was not "substantial." However, assessing the credibility of a witness is an exclusive function of the jury and is not to be usurped by the court. (*People* v. *Flannel, supra,* 25 Cal.3d at p. 684; *People* v. *Wickersham, supra,* 32 Cal.3d at p. 324.) ██ Moreover, "[t]he fact that evidence may be incredible, or is not of a character to inspire belief, does not authorize the refusal of an instruction based thereon, for that is a question within the exclusive province of the jury." (*People* v. *Burnham, supra,* 176 Cal.App.3d at p. 1143, quoting *People* v. *Flannel, supra,* 25 Cal.3d at p. 684.)

In *People* v. *Speaks* (1981) 120 Cal.App.3d 36, 40 [174 Cal.Rptr. 65], this court held that "[t]he testimony of one witness, here, the defendant, may constitute substantial evidence [to warrant a requested jury instruction] (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 248, p. 4240), and doubts as to the sufficiency of the evidence must be resolved in favor of the accused (*People* v. *Flannel, supra,* 25 Cal.3d 668, 685)." "It is clear nothing more than the testimony of a defendant may be sufficient to trigger the duty to instruct sua sponte on the defense of a bona fide belief in the victim's consent. [Citations.]" (*People* v. *Burnham, supra,* 176 Cal.App.3d at p. 1148.)

We conclude there was evidence worthy of consideration by the jury that Teodoro was acting in self-defense. Regardless of how incredible that evidence may have appeared, it was error for the trial court to determine unilaterally that the jury not be allowed to weigh and assess the credibility of Teodoro's testimony in the context of reasonable belief in the necessity to defend himself against Franco.

Having determined it was error for the trial court to refuse to give the requested instruction on self-defense, we must now decide whether that error requires reversal of Teodoro's and Juan's convictions of assault with a deadly weapon.

The California Supreme Court in *People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33], reiterated its previous holding in *People* v. *Carmen, supra,* 36 Cal.2d at pages 773-774, that it is "reversible error to refuse a manslaughter instruction when there is any evidence that would warrant a conviction of manslaughter [citations]. Reversal is not required because of a reasonable probability that in the absence of the error the jury would have reached a different verdict [citation], but because the defendant has a constitutional right to have the jury determine every material issue presented by the evidence." (*People* v. *Modesto, supra,* 59 Cal.2d at p. 730.) Thus, the error may not be cured by the appellate court "weighing the evidence and finding it is not reasonably probable that a correctly instructed jury would have found the defendant guilty. [Citation.]" (*People* v. *Rivera* (1984) 157 Cal.App.3d 736, 743 [203 Cal.Rptr. 842].) Only where the factual question posed by the omitted instruction is resolved adversely to the defendant under another properly given instruction is the "reversible per se" rule inapplicable. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 720-721.)

Here, accepting Teodoro's version of the incident that he acted in self-defense, the jury could have found him not guilty of assault with a deadly weapon based on that defense. The failure to give the jury that option interfered so fundamentally with the performance of its constitutionally mandated role—to assess credibility—that the error is not amenable to a harmless-error analysis.

Moreover, we find no indication that the issue of self-defense was resolved adversely to Teodoro by other instructions under the *Sedeno* exception to the reversible per se rule. Although CALJIC No. 5.17 was given, that instruction pertains only to an honest but *unreasonable* belief in the necessity to defend oneself, beginning with the premise that a defendant's belief in the necessity to defend was unreasonable. The obverse of that premise (and Teodoro's sole theory of defense here), that Teodoro was

reasonable in his belief of the need to defend himself with deadly force, was simply not presented to the jury.

The recent cases of *Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101] and *People* v. *Lee* (1987) 43 Cal.3d 666 [238 Cal.Rptr. 406, 738 P.2d 752], do not change this result. In *Clark,* the jury in a murder trial had been given an instruction that impermissibly shifted the burden of proof on malice. The United States Supreme Court held the harmless-error standard of *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 708, 87 S.Ct. 824, 24 A.L.R.3d 1065], applied to the erroneous malice instruction because that error was "not 'so basic to a fair trial' that it can never be harmless. [Citation.]" (*Rose* v. *Clark, supra,* 478 U.S. at p. 580 [92 L.Ed.2d at p. 472, 106 S.Ct. at p. 3107].) The court reasoned that the defendant had received a fair trial in all other respects and that the jury had been clearly instructed it had to find defendant guilty beyond a reasonable doubt as to every element of first and second degree murder. (*Ibid.*)

In discussing the *Chapman* standard, the Court noted "harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury. We have stated that 'a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict . . . regardless of how overwhelmingly the evidence may point in that direction.' [Citations.] This rule stems from the Sixth Amendment's clear command to afford jury trials in serious criminal cases. [Citation.] Where that right is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty." (*Rose* v. *Clark, supra,* 478 U.S. at p. 578 [92 L.Ed.2d at p. 471, 106 S.Ct. at p. 3106].)

In *People* v. *Lee, supra,* 43 Cal.3d at page 669, the trial court had instructed the jury that attempted murder requires the specific intent to unlawfully kill a human being. The court further instructed that if the attempted killing resulted from an intentional act done with implied malice, it was not necessary to establish defendant intended his act would result in death. (*Id.* at p. 670.) Defendant was convicted of attempted murder and robbery and the Court of Appeal affirmed the conviction.

The California Supreme Court held the trial court's conflicting instructions on the issue of specific intent were erroneous, subject to the harmless-error standard, and further held the error was harmless beyond a reasonable doubt. Citing *Rose* v. *Clark, supra,* 478 U.S. 570, the court stated: "In the present case, as in *Clark,* the conflicting instructions did not affect the composition of the record nor preclude the admission of relevant evidence

bearing on the intent issue. The jury likewise was required to focus upon the 'predicate facts' needed to support a finding of implied malice, i.e., an intentional act involving a high probability of fatal consequences, done for a base, antisocial purpose with a wanton disregard for human life. Moreover, here the jury was faced only with conflicting instructions on the intent issue, rather than wholly erroneous or incomplete instructions on that issue." (*People* v. *Lee, supra,* 43 Cal.3d at pp. 675-676.)

In both *Clark* and *Lee,* the juries were instructed, although erroneously, on the requisite intent to support the convictions. The erroneous instruction in *Clark* created a presumption of malice while the instruction in *Lee* improperly presumed intent from acts of implied malice. Those errors were deemed harmless because a presumption does not remove the issue of intent from the jury's consideration, making it distinguishable from other instructional errors that prevent a jury from considering an issue. (*Rose* v. *Clark, supra,* 478 U.S. at p. 580, fn. 8 [92 L.Ed.2d at p. 472, 106 S.Ct. at p. 3107], quoting *Connecticut* v. *Johnson* (1983) 460 U.S. 73, 95, fn. 3 [74 L.Ed.2d 823, 835, 103 S.Ct. 969], Powell, J., dissenting.) Here, in contrast, the trial court determined Teodoro's testimony was not credible and thereby prevented the jury from considering the issue of self-defense. In effect, the "wrong entity judged the defendant guilty." (*Rose* v. *Clark, supra,* 478 U.S. at p. 578 [92 L.Ed.2d at p. 471, 106 S.Ct. at p. 3106].)

Moreover, the court in *Lee* distinguished the error in that case with other instructional errors warranting automatic reversal, thus leaving the holding of *Modesto* intact: "Although a defendant has a constitutional right to have the jury determine every material issue presented by the evidence, and an improper refusal of instructions on a defense theory supported by the evidence has been deemed reversible per se (*People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33] [citations]; but see *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720-721 [112 Cal.Rptr. 1, 518 P.2d 913] [citations]), in the present case the jury was instructed, albeit contradictorily, on the subject of specific intent to kill. Accordingly, no *Modesto* error was committed here." (*People* v. *Lee, supra,* 43 Cal.3d at p. 675, fn. 1.)

Where, as here, there is no *Sedeno* exception to the reversible per se rule, we conclude that in keeping with *Modesto,* Teodoro's conviction of assault with a deadly weapon must be reversed. Because Juan's conviction was as an aider and abettor of Teodoro, it necessarily follows that Juan's conviction be reversed as well. Had the jury been allowed to find Teodoro acted in self-defense, no crime would have occurred for Juan to aid and abet.

## II

Because we reverse both Teodoro's and Juan's convictions on count one for the reasons discussed above, we need not address their contentions

regarding inconsistent verdicts as to that count. ■ However, Teodoro further asserts the two verdict forms returned by the jury as to count three are "inherently inconsistent." He argues count three subsumes all lesser included offenses and therefore any further verdict on a lesser included offense is inconsistent with the finding of not guilty of count three. We find no support for this argument either in law or logic.

Teodoro relies on *People* v. *Soto* (1985) 166 Cal.App.3d 428 [212 Cal.Rptr. 425], for the proposition that when the trial court permits inconsistent verdicts of guilty and not guilty to be entered, the accused is entitled to an acquittal. We conclude *Soto* is inapposite here.

The defendant in *Soto* was charged, inter alia, with murder. The jury returned a verdict form of " 'not guilty of murder as charged in count I . . . and fix[ed] the degree of the offense as murder in the second degree.' " (*People* v. *Soto, supra,* 166 Cal.App.3d at p. 436.) Both counsel and the trial court assumed the verdict was one of guilty of second degree murder. (*Id.* at pp. 432-433.) After the jury had been dismissed, the court noticed the ambiguity in the verdict forms. The court "ordered the jury reimpaneled to clear up the ambiguity; the jury then found appellant guilty of second degree murder." (*Id.* at p. 433.)

On appeal, the court reversed as to the murder charge, concluding the trial court had no authority to reimpanel the jury after it had been discharged. Thus, the verdict of guilty of second degree murder returned after the jury had been reimpaneled was a nullity. The court, in considering the legal effect of the original verdict forms, cited *People* v. *Tilley* (1901) 135 Cal. 61, 62-63 [67 P. 42]: "[T]he Supreme Court, after noting that the form of the verdict is to be regarded as immaterial if 'the intention to convict of the crime charged be *unmistakably expressed*' (italics added), then noted Penal Code section 1162 which states 'no judgment of conviction can be given unless the jury *expressly finds against the defendant* upon the issue, . . .' (Italics added.)" (*People* v. *Soto, supra,* 166 Cal.App.3d at p. 437.) Concluding there had been no express finding against the defendant of second degree murder, the court reversed his conviction.

Teodoro's analysis of *Soto* is correct as far as it goes, but crucial to his application of that case here is the assumption that the verdict forms returned in this case were, in fact, inconsistent. That assumption, however, is unsupported by the facts and fatal to his argument.

In 1927, section 954 was amended with the express intent to nullify the inconsistent verdict rule of *People* v. *Andursky* (1925) 75 Cal.App. 16 [241

P. 591].[4] ▮ Since the time of that amendment " '. . . any verdict of guilty which is sufficiently certain is a valid verdict even though the jury's action in returning it was, in a legal sense, inconsistent with its action in returning another verdict of acquittal or guilt of a different offense.' " (*People* v. *Lopez* (1982) 131 Cal.App.3d 565, 570 [182 Cal.Rptr. 563], quoting Witkin, Cal. Criminal Procedure (1963) Judgment and Attack in Trial Court, § 549, p. 560.)

Here, the jury expressly found Teodoro guilty of false imprisonment but not guilty of count three. The verdict form concerning the offense of false imprisonment stated: "We find the defendant Guilty of False Imprisonment;" the only verdict form that contained the language "NOT Guilty" was that one stating, "We find the defendant NOT Guilty of Count III." ▮ Apparently the jury was not instructed that it could add the word "NOT" to "Guilty" to amend an existing verdict form to conform with its findings. The jury was instructed, pursuant to CALJIC No. 17.10, that it should find a defendant not guilty of a greater charge before convicting on a lesser included offense.[5] Thus, the only choice available to find Teodoro not guilty of kidnapping, without physically altering one of the forms, was "NOT Guilty of Count III."

In fairness to the jury, we note the instructions regarding the use of the verdict forms were less than pellucid and undoubtedly contributed to the jury's choice of verdict forms to express its findings. We have no difficulty, however, ascertaining that the jury's intent was to convict on the lesser included offense of false imprisonment and that, in the totality of the circumstances, the verdicts returned were not inconsistent.

As to Teodoro's speculations regarding the possible reasons the jury returned the verdicts it did, we agree with the observation of the court in

---

[4] Section 954 was amended to include the following language, in pertinent part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, . . . An acquittal of one or more counts shall not be deemed an acquittal of any other count."

[5] This instruction was in keeping with the Supreme Court's holding in *Stone* v. *Superior Court* (1982) 31 Cal.3d 503 [183 Cal.Rptr. 647, 646 P.2d 809]. The court in *Stone* held that a trial court is constitutionally obligated to afford the jury "an opportunity to return a not guilty verdict on the greater offense regardless of whether or not the jury is able to reach a verdict on a lesser included or lesser related offense." (CALJIC No. 17.10 (4th ed. 1987 pocket pt.), Use Note, p. 76.) Close on the heels of *Stone*, CALJIC No. 17.12 was formulated. It expressly states that an accused must be found not guilty of the greater offense before he or she can be convicted of a lesser included offense. We note that much of the confusion surrounding the verdicts in this case might have been avoided had the trial court given CALJIC No. 17.12. Although the use note to CALJIC No. 17.10 indicates that 17.10 should preclude 17.12 (*ibid.*), the two are not inconsistent with each other. Indeed, there are occasions (as here) when 17.10 would complement 17.12 rather than obviate it.

*People* v. *Crawford* (1953) 115 Cal.App.2d 838, 841-42 [252 P.2d 963]: "We think it useless to follow [him] through [his] highly-ingenious analysis, for error must be affirmatively shown by the record and cannot rest upon speculation."

## DISPOSITION

The judgments as to count one for both Teodoro and Juan are reversed. In all other respects, the judgments are affirmed.

**BENKE, J.**—I concur in the result.

The rule of *People* v. *Modesto* (1963) 59 Cal.2d 722 [31 Cal.Rptr. 225, 382 P.2d 33], which rests upon the California Constitution, requires the result reached herein. On this basis I agree with the majority opinion. However, I am reluctant to agree that *Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101], and *People* v. *Lee* (1987) 43 Cal.3d 666 [238 Cal.Rptr. 406, 738 P.2d 752], which embody federal principles, require per se reversal in this case, where an instruction not involving an element of the offense is involved.

**SCHERER, J.**\*—I respectfully dissent.

I disagree with the majority's conclusion the trial court erred in refusing to instruct the jury on self-defense as to count one, attempted murder. Even if it was error to omit the instruction, I believe that error was harmless beyond a reasonable doubt.

At trial, there was no evidence adduced to support Teodoro's theory of self-defense except his own testimony. However, Teodoro's testimony was not sufficient to require a self-defense instruction. For the use of deadly force in self-defense to be justified, the actor must have "reasonable ground to believe and does believe that there is imminent danger that the other person will kill him or cause him great bodily injury, . . . a bare fear of death or great bodily harm is not sufficient." (CALJIC No. 5.12 (4th ed. 1979).) Here, there was no evidence Franco even *had* a knife or gun, much less put Teodoro in imminent danger with such a weapon. The evidence showed Teodoro had drawn his knife before the alleged threat by Franco. Mary Helen Hernandez, who was sitting with Franco, testified Franco never threatened Teodoro and never reached into his pocket. Another customer in the bar, Sebastian Luna, testified Teodoro was the aggressor and that he provoked the confrontation. All the evidence presented at trial is

---

\* Assigned by the Chairperson of the Judicial Council.

contrary to Teodoro's claim of self-defense. Thus, Teodoro's version of the facts was merely a "bare fear of death or great bodily harm" insufficient to warrant an instruction on self-defense. (CALJIC No. 5.12.) As the People correctly point out, "[a] man has not the right to provoke a quarrel, go to it armed, take advantage of it and then convert his adversary's lawful efforts to protect himself into grounds for further aggression against him under the guise of self-defense." (*People* v. *Garcia* (1969) 275 Cal.App.2d 517, 523 [79 Cal.Rptr. 833].)

To allow a criminal defendant an automatic right to any instruction based on his theory of the case, no matter how tenuous and unsupported by the evidence that theory may be, would put our trial courts in the untenable position of having to give instructions that are potentially confusing to the jury and possibly in direct conflict with the evidence. As stated by the Supreme Court in *People* v. *Mayberry* (1975) 15 Cal.3d 143, 151 [125 Cal.Rptr. 745, 542 P.2d 1337] and reiterated in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, footnote 12 [160 Cal.Rptr. 84, 603 P.2d 1], where there is no substantial evidence of the defendant's theory of the case, "the court does not err in refusing to give instructions based on that defense." Accordingly, I believe the trial court was correct in its assessment the evidence was insufficient, as a matter of law, to require a self-defense instruction.

Even assuming it was error for the trial court to refuse to instruct on self-defense, that error was harmless. As our Supreme Court has observed, "aside from errors affecting fundamental rights, 'there is a strong presumption that any other errors that might have occurred are subject to harmless error analysis.'" (*People* v. *Lee* (1987) 43 Cal.3d 666, 675 [238 Cal.Rptr. 406, 738 P.2d 752], quoting *Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101, 3107].) "The thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments. Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed. As we have repeatedly stated, 'the Constitution entitles a criminal defendant to a fair trial, not a perfect one.' [Citations.]" (*Rose* v. *Clark, supra,* 478 U.S. at p. 579 [92 L.Ed.2d at p. 471, 106 S.Ct. at p. 3107].)

Thus, the appropriate analysis here is whether the error was "harmless beyond a reasonable doubt" under the standard of *Chapman* v. *California* (1967) 386 U.S. 18, 21 [17 L.Ed.2d 705, 708, 87 S.Ct. 824, 24 A.L.R.3d 1065]. (See *People* v. *Lee, supra,* 43 Cal. 3d at p. 676; *Rose* v. *Clark, supra,* 478 U.S. at pp. 576-577 [92 L.Ed.2d at pp. 469-470, 106 S.Ct. at pp. 3105-3106].) Applying the *Chapman* test here, a review of the entire record leads

to the inescapable conclusion the error was harmless beyond a reasonable doubt. The evidence against Teodoro was strong. Teodoro testified he stabbed Franco three times. Although Teodoro testified he did so in self-defense, the witnesses to the assault testified Teodoro was the aggressor. Teodoro himself admitted he first pulled the knife and when Franco charged at him, he hit Franco with his fist and stabbed him when he thought Franco was going to pull something out of his pocket.

Further, defense counsel for Teodoro argued a theory of self-defense in closing argument. Thus, the factual issue of self-defense was not completely eliminated from the jury's consideration. The jury chose to believe those witnesses who testified Teodoro was the aggressor. Because the record establishes Teodoro's guilt beyond a reasonable doubt, I would affirm the judgment as to Teodoro and also as to Juan as an aider and abettor.

Respondent's petition for review by the Supreme Court was denied November 17, 1988.