Filed 12/21/21 P. v. Ramirez-Perez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B305377 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA099103) |
| v. | |
| JESSE RAMIREZ-PEREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Upinder S. Kalra, Judge. Affirmed.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jason Tran and Shezad H. Thakor, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jesse Ramirez-Perez (Defendant) appeals the judgment entered following a jury trial in which he was convicted of murder in the second degree.  (Pen. Code, § 187, subd. (a).)  The jury further found true the use of a deadly weapon enhancement.  (Pen. Code, § 12022, subd. (b)(1).)  The trial court imposed an aggregate sentence of 15 years to life.  Defendant contends that the trial court erred in:  (1) admitting evidence of a prior assault under Evidence Code[1] sections 352 and 1101, subdivision (b); and (2) failing to instruct on self-defense and the offense of voluntary manslaughter.  We disagree and affirm.

## FACTUAL BACKGROUND

In the afternoon of October 3, 2018, Defendant bought a blue and black Defender brand folding knife at a store in Venice.  Later that evening, at a park in Santa Monica, he used a blue and black Defender brand folding knife to stab Eric Perrine, a seventeen-year-old homeless person, once in the lower left chest area.  Though he was found alive and received medical treatment from police and paramedics, Perrine succumbed to his wound on the way to the hospital.

That Defendant stabbed and killed Perrine was not seriously disputed at trial.  Indeed, evidence of these facts was overwhelming.  Perrine identified Defendant as his assailant to police officers.  Officers found Defendant fleeing the scene  and witnessed him throwing the knife into a planter box when they confronted him.  After arresting Defendant, officers recovered the knife.  DNA testing found Defendant's and Perrine's DNA on the

---

1     All further section references are to the Evidence Code unless otherwise specified.

2

knife's handle and Perrine's blood on its blade.

Disputes did arise, however, with respect to the issues which are now the subject of this appeal. First, the defense opposed the prosecution's effort to introduce evidence of a prior assault committed by Defendant. A few months before killing Perrine, Defendant struck another homeless man in the face with a two-foot length of rebar while the victim was sleeping. The victim survived the attack but suffered a significant wound to his face that bled profusely. A witness identified Defendant as the assailant and Defendant was later convicted of felony assault by means likely to inflict great bodily injury. The trial court allowed the jury to hear evidence of the conduct but not the conviction. Prior to the relevant testimony, and on the jury forms, the trial court instructed that such evidence could only be considered for whether "the defendant acted with the intent required in th[e] case; or the defendant had a plan or scheme to commit the murder alleged in th[e] case."

Second, the defense argued that the jury should be instructed on self-defense and voluntary manslaughter on the basis that substantial evidence indicated Defendant and Perrine may have struggled before the stabbing. Evidence noted by the defense in support of this theory included the possibility that Defendant's blood was also on the knife blade; that Perrine's DNA was found on the handle of the knife; and that Defendant was bleeding from one hand and had his own blood on his face at the time of his arrest. Notably, Defendant did not testify at trial nor indicate to the arresting officers that he had acted in self-defense. Moreover, a medical examination revealed no injuries to Perrine's body other than the knife wound inflicted by Defendant, and Defendant had no other wounds on his body. The trial court

3

declined to instruct on self-defense or voluntary manslaughter.

The jury convicted on second degree murder. The defense moved for a new trial on the grounds underlying this appeal and the trial court denied the motion. This appeal followed.

## DISCUSSION

## I. The Trial Court Did Not Abuse Its Discretion In Admitting Evidence of Defendant's Recent Prior Assault On Another Homeless Person

We review the decision of the trial court to admit evidence for abuse of discretion. (*People v. Rivera* (2019) 7 Cal.5th 306, 339–340.) "Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Wilson* (2021) 11 Cal.5th 259, 304.)

Defendant contends the trial court erred in admitting evidence that he struck and injured a sleeping homeless person at a park in Santa Monica in April of 2018, because this conduct was not relevant to his intent or plan when stabbing Perrine six months later. Defendant further contends that, even if relevant, the probative value of the uncharged act evidence was outweighed by the potential for prejudice. We disagree.

Section 1101, subdivision (a) prohibits evidence of character, including "specific instances of [a person's] conduct" to prove conduct on a specific occasion. However, evidence of another crime or other act is not rendered inadmissible by this rule where relevant to prove a fact *other than* the person's disposition to commit such an act. Such unprohibited uses include, but are not limited to, motive and plan. (§ 1101, subd.

4

(b).) Like all other evidence, evidence of uncharged acts not prohibited by section 1101 is still properly excluded "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . . ." (§ 352.)

Against this statutory backdrop, California courts consider the following three factors in assessing the admissibility of proffered uncharged act evidence: (1) the materiality of the fact sought to be proved or disproved; (2) the tendency of the uncharged act to prove or disprove the material fact; and (3) the existence of any rule or policy requiring the exclusion of relevant evidence. (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1016 (*Dryden*).)

## A. Defendant's Intent Is Material.

Defendant concedes that "intent to kill, malice and premeditation were in dispute" at his trial. As intent is a disputed element the People were obligated to prove to show Defendant committed the charged offense of murder, it is plainly material. This is so even though the act of stabbing was conceded. (*See People v. Gregg* (1968) 266 Cal.App.2d 389, 392 [prior act evidence "admissible in cases where the proof of defendant's intent is ambiguous, as when he admits the acts and denies the necessary intent because of mistake or accident"].)

## B. The April 2018 Incident Tends to Prove Defendant Acted With the Requisite Intent for Murder.

Uncharged act evidence is not admissible if it lacks "some clear connection between the [uncharged act] and the one charged so that it may logically be inferred that if the defendant is guilty of one offense, he must be guilty of the other." (*People v.*

*Poulin* (1972) 27 Cal.App.3d 54, 65.) "A trial court must 'examine the precise elements of similarity between the offenses with respect to the issue for which the evidence is proffered and satisfy itself that each link in the chain of inference between the former and the latter is reasonably strong.' [Citation.] 'If the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded.' [Citation.]" (*Dryden, supra,* 60 Cal.App.5th at p. 1018.) The degree of similarity required depends upon the purpose for which the evidence is offered. "[T]he 'least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent.' " (*People v. Molano* (2019) 7 Cal.5th 620, 665 (*Molano*).)

Defendant contends that his prior commission of an assault by means likely to inflict great bodily injury cannot be used to show the intent for murder because assault is a general intent crime requiring only willfulness, whereas murder requires specific intent.[2] Appellant apparently misreads *Dryden's*

---

[2] Defendant also asserts: "[T]he jury instructions permitted the jury to consider . . . and the prosecutor to argue that [Defendant's] uncharged 'willful' assault [in April 2018] proved [Defendant] had the intent to kill Perrine. As stated by the prosecutor, '[t]he intent was the same.' [Citation.] This was nothing more than telling the jury they could find [Defendant] guilty of murder of Perrine if they found by a preponderance of the evidence that [Defendant] acted 'willfully' in assaulting [his earlier victim]."

We read the standard form jury instructions as properly limiting the permissible use of the uncharged act evidence and specifying the applicable standard of proof and *mens rea* to convict Defendant of Perrine's murder. In any event, as

6

obligation to examine the "elements of similarity between the offenses" as requiring similarity between the crimes' statutory elements as opposed to the conduct giving rise to the crimes. (*Dryden, supra*, 60 Cal.App.5th at p. 1018.) The California Supreme Court considered and rejected this argument in *Molano, supra*, 7 Cal.5th at page 665.

In that case, the trial court admitted evidence that defendant had choked his wife to unconsciousness after an argument about his drug use—conduct for which he pled guilty to corporal injury on a spouse—in his trial for murder of another woman who he strangled with a leather strap, purportedly at her request during consensual intercourse, resulting in her death. (*Molano, supra*, 7 Cal.5th at pp. 629–630, 665.)

Molano argued on appeal that corporal injury on a spouse was a general intent crime whereas the charged crime of murder required specific intent. The *Molano* court found no error in admitting the corporal injury on a spouse evidence, noting that Molano's conduct towards his spouse, who survived, could support an inference that he acted with conscious disregard for the danger to the lives of both women. (*Molano, supra*, 7 Cal.5th

---

Respondent notes, Defendant fails to properly raise a prosecutorial error claim or an instructional error claim with respect to the requisite intent or burden of proof. As such, the court need not consider such claims. (*See People v. Ham* (1970) 7 Cal.App.3d 768, 783, disapproved on another ground in *People v. Compton* (1971) 6 Cal.3d 55, 60, fn. 3 ["Where a point is merely asserted by counsel without any argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion"].)

at p. 665.) "The fortuity that [his spouse] survived the strangulation does not diminish the legitimate inference that defendant harbored a similar intent when he strangled [the decedent], and that her death was not accidental." (*Ibid.*) Our colleagues in Division Seven previously reached a similar conclusion. (*See People v. Walker* (2006) 139 Cal.App.4th 782, 805 ["fact that [the victim of charged offense] but not [the victim of uncharged assault offense] was murdered d[id] not negate the similarity of the two incidents" for purposes of § 1101, subd. (b) analysis].)

Defendant also argues that the facts of the April 2018 assault and the October 2018 killing were too dissimilar for evidence of the former to be introduced against him at trial for the latter. We find no abuse of discretion in the trial court's determination that the incidents were sufficiently similar to support admission under section 1101, subdivision (b). Both attacks occurred in Santa Monica, in parks, against homeless individuals, and within approximately six months of one another. In each instance, Defendant used a weapon to inflict a single wound to the victim and then fled. Although the wounds were to different parts of the victims' bodies (a solid steel bar strike to the head and a knife stab to the chest), each support an inference that Defendant acted deliberately, with conscious disregard for the danger to the lives of both victims. Such an inference tends to support that Defendant harbored the requisite intent to convict him of murder in the killing of Perrine.[3] (*See* CALCRIM

---

[3]     Defendant repeatedly ignores that malice is the culpable state of mind required for murder, not "intent to kill." While

8

No. 520 [jury required to find defendant "deliberately acted with conscious disregard for human life in order to convict for second degree murder"].)

Whether or not all trial courts would have found sufficient similarity to admit the uncharged act, we are satisfied that the trial court here did not err under our deferential standard of review.[4]

Because we find no error in the conclusion that section 1101 does not render the prior assault evidence inadmissible to show intent to commit murder, we do not reach whether the evidence was also exempted under a common plan theory. (*See People v. Chism* (2014) 58 Cal.4th 1266, 1307, fn. 13 [any error in basis for omitting evidence is "of no consequence" where evidence was properly admitted on other grounds].)

---

intent to kill can satisfy the malice requirement, malice may be implied even in the absence of manifested and deliberate intent. (Pen. Code, §§ 187, subd. (a), 188, subd. (a)(1)-(2).) This may be a product of Defendant's mischaracterization of the crime with which he was charged as "first degree murder." No degree of murder was indicated in the charging document filed against him, which specified the charge only as that of "MURDER, in violation of PENAL CODE SECTION 187(a)."

[4] This conclusion is bolstered by the result in *Molano* where significant differences existed between the charged murder and the uncharged assault, yet error was not found in admitting evidence of the latter. (*See Molano, supra*, 7 Cal.5th at pp. 629–630, 665 [charged murder occurred during sex act with non-spouse by means of leather ligature; uncharged assault occurred during argument with spouse by means of choking].)

### C. No Rule or Policy Required Exclusion of the April 2018 Assault Evidence.

"Because ' "substantial prejudicial effect [is] inherent in [such] evidence," ' uncharged acts are admissible under . . . section 352 only if they have substantial probative value. [Citations.]" (*Dryden, supra*, 60 Cal.App.5th at p. 1018.) " '[T]he probative value of the uncharged offense evidence must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury.' [Citation.]" (*People v. Lewis* (2001) 25 Cal.4th 610, 637.)

Defendant's argument that evidence of the April 2018 assault is unduly prejudicial rests largely on his incorrect assessment of its relevance. As we note above, the Defendant's intent was squarely at issue in the trial and his April 2018 conduct was probative of his intent when stabbing Perrine six months later. When an attack appears unprovoked, the trier of fact may be hesitant to conclude from circumstantial evidence the perpetrator acted with the required intent. This makes evidence of a recent decision by the perpetrator to engage in an arguably similar unprovoked attack highly probative. We further note that evidence of the prior assault, which was not fatal, was not unduly inflammatory as compared to the undisputed evidence that Defendant stabbed and killed Perrine. (*Cf. Molano, supra*, 7 Cal.5th at p. 666 ["The [uncharged] spousal assault, while certainly blameworthy, was not unduly inflammatory compared to the gruesome murder [charged]"].) The trial court properly found that section 352 did not compel exclusion of the prior assault.

## II.    The Trial Court Did Not Err In Declining to Instruct On Self-Defense and Voluntary Manslaughter

We review de novo the trial court's decision on whether to instruct on self-defense or a lesser included offense.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1206; *People v. Cook* (2006) 39 Cal.4th 566, 596.)  Defendant asks that we reverse the trial court for failing to instruct on self-defense and involuntary manslaughter because substantial evidence of a struggle between Defendant and Perrine was before the court.  We disagree.

A defendant is entitled to a self-defense instruction when the court is presented with substantial evidence to support the instruction.  (*People v. Lemus* (1988) 203 Cal.App.3d 470, 476 (*Lemus*).)  For these purposes, "[s]ubstantial evidence" is "evidence from which a jury composed of reasonable [people] could have concluded that the particular facts underlying the instruction did exist.  [Citations.]" (*Id.* at p. 477, internal quotations omitted.)  "If the evidence should prove minimal and insubstantial, however, the court need not instruct on its effect." (*People v. Flannel* (1979) 25 Cal.3d 668, 684.)

Similarly, a court must instruct on a lesser included offense where the accused presents "substantial evidence," i.e. "evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive.  [Citation]." (*People v. Barton* (1995) 12 Cal.4th 186, 204, fn. 8.)  "Speculative, minimal, or insubstantial evidence is insufficient to require an instruction on a lesser included offense."  (*People v. Simon, supra,* 1 Cal.5th at p. 132; *see also People v. Williams* (2015) 61 Cal.4th 1244, 1264 [" '[s]peculation is insufficient to require the giving of an instruction on a lesser included offense' "].)

While Defendant cites authorities that a court is not permitted to weigh or assess the credibility of the evidence offered, it is not bound to view such evidence in a vacuum. (*See, e.g.*, *People v. Simon* (2016) 1 Cal.5th 98, 133–134 (*Simon*) [conducting comprehensive review of witness accounts of murder to conclude defendant was not entitled to self-defense instruction]; *People v. Williams, supra,* 61 Cal.4th at p. 1264 [defendant's contention that murder lacked premeditation contrary to evidence that he orchestrated it]; *People v. Manriquez* (2005) 37 Cal.4th 547, 588 [defendant's statement that first shot was accidental did not support manslaughter instruction where victim was shot five times].)

To show entitlement to a self-defense instruction, a defendant must show substantial evidence of an honest and reasonable belief of the need to defend oneself. (*Simon*, *supra*, 1 Cal.5th at p. 132 [citing *People v. Elmore* (2014) 59 Cal.4th 121, 133–134].)

The lesser included offense of voluntary manslaughter is also known as imperfect self-defense. (*Simon*, *supra*, 1 Cal.5th at p. 132.) To show entitlement to an involuntary manslaughter instruction, a defendant must show substantial evidence that he acted in the actual but unreasonable belief that he was in imminent danger of great bodily injury or death. (*Ibid*.)

## A. Evidence Supporting Defendant's Self-Defense Theories Was Insubstantial.

Defendant points to the same set of facts as comprising "substantial evidence": (1) that Perrine "threatened or attacked [D]efendant," entitling Defendant to a self-defense instruction; and (2) that Defendant "acted either out of provocation or self

defense," entitling him to an involuntary manslaughter instruction.

These facts, stripped of Defendant's unsupported embellishments, are as follow: (1) at the time of his arrest, Defendant had his own blood on his left hand and left cheek; (2) at the time of his arrest, Defendant had an injury to his left hand[5]; (3) defensive wounds are usually found between the elbows and the tips of the fingers, including on the hands; (4) Defendant was not excluded as a contributor to the blood found on the blade of the knife used to stab Perrine; and (5) Perrine's contact DNA was found on the handle of the knife, contributing approximately 9 percent as compared to Defendant's 90 percent.[6]

From these facts, Defendant argues that a struggle had ensued prior to the killing; that "Perrine had the knife first and threatened [Defendant] with the knife"; that "Perrine stabbed

---

[5] While there is general testimony suggesting Defendant had wounds on both hands, specific testimony on the topic indicates that he had fresh wounds only on his left hand. The Santa Monica forensic supervisor identified Defendant's left hand as the only hand where she could see "actual blood" and the arresting officer noted blood visible just on his "left knuckle and finger area." A DNA sample from the back of Defendant's right hand tested negative for blood.

[6] Without citation, Defendant asserted in his opening brief that "[b]lood was found in many different areas of the crime scene suggesting a struggle," which was attributable "to both Perrine and [Defendant]." Record citations Defendant offers in his reply do not support the statements and we disregard them.

Ramirez with the knife"; and that "[Defendant] suffered cuts to his hands consistent with defense wounds from a knife." Defendant's arguments are nothing more than speculation that do not amount to "substantial evidence."

The full record permits no reasonable conclusion that Defendant acted in self-defense pursuant to a fight or struggle. First, Perrine's body had just one injury at the time he was discovered: the stab wound inflicted by Defendant. Second, the only wound evident on Defendant's person at the time of his arrest was one or more "abrasions" on his hand or hands.[7] Contrary to Defendant's assertion, there is no evidence that this is "consistent with defense wounds from a knife," or even consistent with defensive wounds at all. The record testimony is that defensive wounds are in the nature of "bruises," "incised wounds," "stab wounds," or "lacerations." Defendant's hand abrasions are none of these and no reasonable juror could conclude they were caused by a knife blade as Defendant posits.[8]

---

[7] Defendant at one point states that he had "injuries to his cheek." This is not reflected in the record and contrary to unrebutted testimony that there was no face wound but rather a blood smear on one of his cheeks.

[8] Our Supreme Court long ago rejected the argument that a minor wound to a defendant's finger supported a self-defense instruction on the theory that it showed a struggle over a knife: "The only defense seems to be a speculative one; that the defendant wrested the knife from the hands of the deceased, and stabbed him in self-defense; and this is not supported by one scintilla of evidence, other than at the time the killing took place, one of the witnesses observed a scratch, or cut, on the knuckle of

14

In the absence of any injuries to Defendant or his victim indicating a fight or struggle, the presence of Perrine's contact DNA on the handle of the knife is not substantial evidence that Perrine wielded the weapon at Defendant and Defendant then, without sustaining any knife cut or causing any defensive wounds to Perrine, (a) disarmed Perrine; (b) remained in good faith fear of imminent injury or death at Perrine's hands; and (c) turned the knife on Perrine to inflict a clean, single,[9] mortal wound. This is especially so considering Defendant had committed an unprovoked assault against a similar victim in a similar location. In short, it would take an absolute suspension of disbelief to infer from Defendant's proffered evidence that he acted in self-defense. A reasonable jury could not be expected to reach such a conclusion.

---

the [defendant], which was bleeding; whether cut by himself in the scuffle, or not, no one knew or pretended to say. So trifling a circumstance is scarcely a sufficient pretext for eliminating the whole criminal code; and instructions in civil and criminal trials should be drawn with some slight reference to the case made by the evidence." (*People v. Roberts* (1856) 6 Cal. 214, 217.)

[9] Defendant opines that the single stab wound "suggest[s] a deadly act triggered by provocation or self defense rather than malice." Defendant's record citations for this proposition support only the fact that Perrine died of a single stab wound; not that the nature of his injury was indicative of the circumstances leading up to it. We are aware of no generally accepted theory of human behavior that those who defend themselves with a knife they have wrestled away from their attacker normally do so in a careful, limited, surgical fashion.

Defendant offers just one case, *Lemus, supra*, 203 Cal.App.3d 470, to support his entitlement to a self-defense instruction under the facts presented. This case is easily distinguishable on the grounds that the defendant testified that the victim threatened, hit, and attempted to stab him before the killing. (*Id.* at p. 476.) Error was found because the trial court discounted the credibility of the defendant's direct testimony supporting the requested instructions. (*Id.* at p. 478.)

No such error occurred in this case. Indeed, the Defendant elected not to testify and offer a self-defense narrative. While it is not necessary that a defendant testify in order to establish he acted in self-defense, the absence of testimony from the accused or a percipient witnesses renders it extremely difficult to prove the defendant's beliefs in the moment of the act. (*Cf. Simon, supra*, 1 Cal.5th at p. 134 ["[Defendant] also did not testify, and there is no evidence he ever told anyone that he had acted out of fear"].) It is not enough for a defendant to conjure up a self-defense scenario that is not directly contradicted by the evidence. The defendant must point to "substantial evidence" supporting the self-defense conclusion, as *Lemus, supra*, requires.

Defendant refers the court to no authority to suggest that circumstantial evidence of the quantum and nature identified in the record below is sufficient to support the requested self-defense instruction, and we decline to so find.[10]

---

[10] In light of our rejection on the merits of Defendant's arguments that the prior assault should have been excluded, and that self-defense/voluntary manslaughter instructions should have been given, his argument that the cumulative impact of

16

## DISPOSITION

The judgment is affirmed.

HARUTUNIAN, J.*

We concur:


GRIMES, Acting P. J.



STRATTON, J.

---

those rulings requires reversal as a denial of due process also fails.  (*People v. Anderson* (2001) 25 Cal.4th 543, 606.)

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.